## Louisville & Interurban R. R. Co. v. Rommele.

(Decided March 11, 1913.)

### Appeal from Shelby Circuit Court.

1. Carriers—Racks in Cars to Hold Packages—Liability for Package Falling Out of.—Trainmen are required to exercise ordinary care to protect passengers from being injured by packages falling out of racks, and when a package that is placed in a rack is of such size or character as to reasonably attract the attention of careful, prudent persons, and to put them on notice that it may fall, the company will be liable to a passenger injured by the package falling out of the rack if its servants have had reasonable opportunity to discover its presence.

2. Carriers—Measure of Duty in Regard to Construction of Racks.— It is the duty of a carrier to exercise the highest practicable degree of care in the construction of racks used in passenger cars so as to make them sufficient for the purpose intended, and if a rack in which a small package is placed is so constructed as that the ordinary movement of the car will cause it to fall out of the rack, it is a question for the jury to say whether or not the carrier exercised the required degree of care in having in its car this character of rack.

WILLIS, TODD & BOND for appellant.

GEORGE L. PICKETT, P. J. BEARD for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In February, 1912, the appellee boarded one of the cars of the appellant company at Crestwood, in Oldham County, and took a seat near the center of the car. Soon afterwards the conductor came through the car, collected her fare, and passed on to the front of the car. About a mile from Crestwood, a man carrying a leather crupper for a horse, in a sack, got on the rear end of the car and put the sack containing the crupper in a rack or receptacle for packages that was located over another seat in the rear end of the car, and after doing this he took a seat in the front part of the car. A few minutes after this appellee changed her seat and happened to take the seat immediately under the rack containing the crupper, and a very short while after this the package fell out of the rack and struck appellee on the head and shoulder, injuring her, as she claimed, quite severely.

In this suit to recover damages for the injuries alleged to have been suffered, she recovered a verdict for $1,500, and from the judgment on the verdict this appeal is prosecuted.

The petition averred that while she was a passenger upon the car, "the defendant, its servants, agents and employes, by and and through gross negligence and carelessness, suffered and permitted a large heavy package to be in the rack over the seat occupied by her on defendant's aforesaid train of cars, which, on account of the gross negligence and carelessness of the defendant, its agents, servants and employes, fell upon her, striking her with great force and violence."

It appears from the evidence that the crupper, which is a small light rounded piece of leather used with harness and the sack in which it was carried, had only been in the rack a few minutes before it fell out while the car was going around a curve in the track, about a mile and a half from where Mr. Woolridge, the man who brought the package into the car, got on.

Appellee testifies in substance that she did not notice the package until it fell on her. She was not asked, and did not say, whether the conductor saw or had opportunity to see the package before it fell, but said he was only a few feet from her when it did fall.

The conductor testified that he did not notice Mr. Woolridge when he came in, and said that if he had a

package in his hand he did not know it, nor did he observe him put the package in the rack or know that it was in the rack until it fell out, at which time he was walking through the car and within a few feet of appellee. That he had probably passed through the car and by the rack in which the package was once after Mr. Woolridge got on and before it fell. That the racks, in one of which the package was put, were placed in the car for the purpose of putting packages in, and he could have seen the package if he had been giving attention to it. He further said that the rack was shallow, sloping back towards the wall or side of the car, with only a small rod running across the front of the rack about an inch from the bottom, to hold packages in.

The only other witnesses who testified as to what occurred on the car were Woolridge and a passenger named Scobee. Woolridge did not know anything about the falling of the package, nor hear anything about it until several days afterwards. Scobee saw Woolridge put the package in the rack, but gave it no further attention until he saw it fall.

The evidence shows that the conductor did not see the package in the rack, or have his attention called to its presence, and there is no evidence even tending to show that there was anything in the size or appearance of this package, or the manner in which it was placed in the rack, to attract attention or to put the conductor on notice that it was not a suitable package to put in the rack, or to indicate that the motion of the car might cause it to fall, or that carrying it in the rack would probably result in injury to a passenger; on the contrary, we would say that it was just that sort of package in size, appearance and weight for which racks in passenger cars are intended.

With the evidence in this condition, we think the court should have directed a verdict in favor of the company.

If the servants in charge of the car, or whose duty it is to look after the safety and comfort of passengers, see or have opportunity in the performance of their duties to see a package or bundle in a rack, and it is of such size or appearance, or is so placed in the rack as that a prudent person in the exercise of ordinary care might reasonably anticipate that the movement of the car would cause it to fall out, it is the duty of the servants named to remove it from the rack or secure it in some

way, and if they fail to do this, and a passenger is injured by the package falling from the rack, the carrier will be liable. But if a package or bundle placed in a rack is of a size and appearance suitable to be placed in the rack, and there is nothing in the manner in which it is placed in the rack to cause a prudent person exercising ordinary care to anticipate that it might fall out, the carrier will not be liable.

This is the substance of the rule announced by us in Adams v. Louisville & Nashville Railroad Co., 134 Ky., 620. In that case Mrs. Adams was injured by a suit case that fell out of a rack in the car in which she was riding. In holding that it was a question for the jury to say whether the carrier was negligent or not we said, in the course of the opinion, that,

"The rack in which the suit case was placed was thirty-four inches long, eight and one-half inches wide, and three inches deep. It was rounding at the corners. * * * The suit case which was produced was twenty-one inches long, fourteen inches high and seven and one-half inches wide. * * * If the plaintiff's testimony is true, the suit case when lying flat upon the rack would protrude beyond its edge between five or six inches. The rack was composed of metal bars uniting in a metal rim at the outside. If an object was placed entirely within the rack, the rim would hold it in; but if it protruded beyond the rim, there would be nothing to stay it when moved by the oscillation of the cars. If a suit case protruded as much as five or six inches beyond the edge of the rack, and was fourteen inches wide, a very slight movement of the suit case from the oscillation of the train would throw its center of gravity outside of the rack. The fact that the trainmen did not see the suit case in the rack is not conclusive that the defendant is not liable. It was incumbent upon them, not only to exercise ordinary care to have a safe car when they started, but to see that the car continued safe during the journey. Those in charge of a passenger train cannot shut their eyes to the condition of the car as the train goes along. They must exercise ordinary care for the safety of the passengers, and, although the trainmen had not in fact seen the suit case in the rack, still, according to the evidence of the plaintiff, it was not placed there after she got on the train, and had been there the whole time that she occupied the seat. Both the trainmen had been

through the car three or four times while she was riding there. The brakeman had taken her to the seat, and the conductor had taken up her ticket there. If there was anything in the appearance of the suit case to indicate danger of its falling, the condition of things had existed long enough for it to be a question for the jury whether, by the exercise of ordinary care, they should have observed it. As the suit case protruded so far beyond the rack and the center of gravity would so easily be thrown beyond its edge, it was a question for the jury whether the trainmen, by the exercise of ordinary care, should not have apprehended danger to a passenger sitting beneath.''

The essential difference between the facts of that case and the facts of this case are obvious. There the large package placed in the rack protruded five or six inches over the outside edge of the rack, making it a conspicuous object and one that might reasonably attract the attention of trainmen who are required to exercise ordinary care to protect passengers from being injured by falling packages. Here the evidence does not show that the rack was not amply sufficient in size to hold the package, nor does it show that any part of the package protruded over the edge of the rack.

Under the circumstances, we think, as a matter of law, that the conductor was not careless or negligent in not removing this package from the rack or securing it so that it would not fall, or in not warning appellee of the danger in sitting under it. In the exercise of reasonable care he could not have foreseen or anticipated that this package would fall out of the rack if he had seen or had opportunity to have seen it in the rack.

It must be kept in mind that this case was practiced on the theory that the servants of the company in charge of the car were guilty of negligence in permitting this package to be placed in and to remain in the rack. The appellee put her case upon the negligence of the servants in charge of the car and not upon the negligent construction of the rack itself, and upon this theory alone the case was submitted to the jury. The fact, however, that the servants of the company in charge of the car may not have been guilty of negligence will not exonerate the company from liability for the injury sustained by appellee if it was caused by the defective or insufficient construction of the rack from which the package fell.

When the company placed in its cars these racks in-

tended for the use of passengers, and in which they were invited to put suitable packages, it was the duty of the company to exercise the highest practicable degree of care in their construction to make them sufficient for the purpose intended, and if, as appears from the evidence in the case, the rack in which this package was put was so constructed as that the ordinary movement of the car would cause it to fall out of the rack, it was a question for the jury to say whether or not the company exercised the required degree of care in having in its car this character of rack.

We do not, of course, undertake to lay down any rule as to the dimensions or depth of these racks, or the manner of their construction. What we do say is, that when a package like the one described in this case is caused to fall out of the rack by the ordinary movement of the car, this circumstance of itself, in connection with a description of the rack and the package, is sufficient to take the case to the jury on the issue relating to the sufficiency of the rack. On another trial the case should be submitted to the jury only upon the question whether or not in the construction and maintenance of this rack the company exercised the highest practicable degree of care to make it sufficient to prevent small packages, properly placed in the rack, from falling out by the ordinary movement of the car, and to clearly present this issue amended pleadings may be filed by the parties.

We are asked by counsel for appellant to rule that the verdict secured by appellee was excessive, but upon this question we decline to express an opinion, leaving it open for future development.

The judgment is reversed, with direction for a new trial in conformity with this opinion.