## Barry v. Commonwealth.

(Decided February 5, 1926.)

### Appeal from Fayette Circuit Court.

1. Criminal Law—Thief's Delivery of Stolen Car to Defendant or Another did Not Make Thief Accomplice of Such Parties in Crime of Knowingly Receiving Stolen Property.—In prosecution for receiving stolen property, held, thief's act in delivering stolen car to defendant or one for whom defendant acted did not make thief

accomplice of defendant or other party in crime of knowingly receiving stolen property, the thief's crime being that of grand larceny, and his asportation, sale, and delivery to accused or other party were but elements thereof.

2. Receiving Stolen Goods—Knowingly Receiving Stolen Car with Knowledge that it was Stolen Distinct Crime, and Not Degree of Grand Larceny.—A defendant who knowingly received car with knowledge that it had been stolen was guilty of the crime of knowingly receiving stolen property, which is a separate and distinct offense, and not a degree of grand larceny.

3. Criminal Law—One who could Not be Jointly Indicted with Defendant could Not be Regarded as "Accomplice."—To constitute one an "accomplice" he must sustain such a relation to the criminal act charged that he could be jointly indicted for its commission.

4. Criminal Law—Instruction on Accomplices, though Not Warranted by Evidence, could Not be Complained of by Accused.—In prosecution for receiving stolen goods, court's charge as to accomplice, testimony under Criminal Code of Practice, section 241, although unauthorized by evidence, could not be complained of by accused, where giving thereof resulted from insistence of accused's counsel.

5. Criminal Law—Evidence of Agreement by Thief with Another, in Accused's Presence to Steal Automobiles Admissible in Prosecution for Knowingly Receiving Stolen Property.—In prosecution for receiving stolen goods, evidence given by thief as to agreement made, in presence of accused, with another to steal and furnish automobiles, held competent to show accused's guilty knowledge of such agreement, to show accused's connection with delivery of such cars, and to show intent and motive with which he received cars for such other party.

6. Criminal Law—Evidence Held to Support Conviction.—In prosecution for knowingly receiving stolen goods, evidence held to support conviction even though principal witness was confessed thief, where his testimony was strongly corroborated by facts and circumstances furnished by Commonwealth's evidence.

7. Criminal Law—Province of Jury to Pass Upon Credibility of Witnesses, and they May Rest Verdict on Testimony of One or Set.—It is province of jury to pass upon the credibility of witnesses and evidence, and from it determine truth of matter in controversy, and in doing so they may accept testimony of one witness or set of witnesses and rest verdict upon his or their testimony alone.

8. Criminal Law—Court of Appeals will Not Disturb Verdict if there is any Evidence Tending to Establish Defendant's Guilt.—Court of Appeals will not disturb verdict of conviction if there is any evidence tending to establish defendant's guilt.

HARRY B. MILLER for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHARLES F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The indictment and trial of the appellant, Albert Barry, in the Fayette circuit court for the crime of unlawfully and feloniously receiving stolen property of greater value than $20.00, with knowledge of the stealing thereof, resulted in a verdict of guilty and judgment of conviction, by each of which his punishment was fixed at confinement of two years in the penitentiary. He was refused a new trial and has appealed.

The grounds relied on by the appellant for the reversal of the judgment of the trial court, are set forth in an assignment of the errors alleged to have been committed by that court on his trial and specified as follows: (1) Failure to properly instruct the jury on the law of the case. (2) Admission, over the appellant's objections, of incompetent evidence. (3) Refusal of an instruction peremptorily directing the acquittal of the appellant by verdict of the jury, asked by him at the conclusion of the evidence. (4) Refusal to him of a new trial on the ground that the verdict was contrary to law and unsupported by the evidence.

Though all of the above grounds are urged by the appellant's counsel for the reversal of the judgment of the trial court, that court's refusal of the peremptory instruction asked by the appellant, assigned as error by the third ground, is made the basis of counsel's chief contention, it being argued by the latter in support of that contention that the giving of the instruction in question was required, because the only evidence introduced by the Commonwealth that tended to prove the appellant's guilt of the offense charged in the indictment, was furnished by the testimony of Stevens, an alleged accomplice, which, as claimed, was uncorroborated by any other competent evidence heard on the trial. As the soundness, or unsoundness, of this contention must be determined from the evidence, as a whole, appearing in the record, its consideration for that purpose will now be undertaken.

It appears from the indictment and also, without contradiction, from the evidence, that the stolen property described in the indictment and therein charged to have been unlawfully and feloniously received by the appellant with the knowledge that it had been stolen, was a new "Studebaker special six sedan" automobile, of the value of $2,000.00 owned by Walter Uri of Louisville,

Kentucky, who testified that at 6:30 p. m. on January 30, 1924, he rode in the car to the Y. M. C. A. building at the corner of Third and Broadway streets in that city, where, after leaving it standing on Broadway in front of the Y. M. C. A. building, Uri entered that building and remained until 11:45 p. m., at which time he returned to where he had parked the car and discovered that it had been stolen. About two months later, however, Uri was advised by a Lexington police officer of its capture in that city, whereupon he immediately went to Lexington and there readily identified the car as his property and recovered its possession.

Orville Stevens, introduced as a witness for the Commonwealth, testified that he was 26 years of age and a native of Cincinnati, Ohio, but that his home is at Bellevue, Kentucky, from which place he went to Louisville shortly before the theft of the Uri automobile and there remained, under the assumed name of "Steve Mulroy," until some time in March, 1924. Stevens admitted that the Uri automobile was stolen by him at, or shortly after, 6:30 p. m., January 30, 1924, and immediately driven from the Y. M. C. A. building where it had been left by the owner to a garage on Second street of which he (Stevens) was then the lessee; and that after arriving at the garage he changed the license tags on the car and started with it for Lexington, but upon reaching what is known as the Bluegrass park, six miles from that city, the gas by which the car was operated became exhausted, which caused Stevens to leave the car at the park and walk the remaining distance to Lexington, where he arrived shortly after midnight.

Stevens further testified that upon reaching Lexington he went to the Scott hotel, where at 2 a. m., January 31, he called over the telephone to the office or room of Frank Hall, captain of the Fayette county patrol, and his employe and assistant, the appellant, Albert Barry, intending to ask them to meet him at the Scott hotel or at a place of their appointment, but was told by some person answering over the telephone that neither of them was then present, but might be soon. Thereupon Stevens told his informant that if either Hall or Barry came in to have him call the Scott hotel, and at about 2:30 a. m. he was called by Barry over the telephone and the latter agreed to bring Hall in an automobile and meet him on the street in front of the hotel, which he in a few minutes did; and at which meeting Stevens informed them of his theft of

the Uri automobile, his attempt to bring it to Lexington for sale to Hall and the necessity for temporarily leaving it at Bluegrass park. The three thereupon started in the car of Hall for Bluegrass park to get the Uri car, but before leaving Lexington drove to the Featherstone garage, where Hall purchased a five-gallon can of gasoline from which to supply the Uri car preliminary to its removal from the park to the city. While riding in Hall's car and at the time of purchasing the gasoline, Stevens and the appellant Barry occupied the rear seat, and Hall the front seat from which he operated the car. And after the parties arrived at the park and supplied the Uri car with gasoline it was left by Hall in charge of the appellant Barry, who ran it to Lexington in the rear of Hall's car, which was occupied by the latter and Stevens. Upon reaching Lexington Hall, according to the further testimony of Stevens, paid him for the stolen car and put him on an early train bound for Louisville, upon which he returned to that city.

Stevens also testified that his acquaintanceship with Hall and Barry began about two weeks before the stealing of the Uri car by him (Stevens) through the instrumentality of Miss Dorothy Tingle, a young woman of Lexington, who arranged a meeting between him and Hall which took place on a street in that city, known as "Cheapside," at which time Hall was accompanied by the appellant, Albert Barry; and that from Cheapside they and Stevens went to Hall's office near the county jail, where in a conversation between Stevens and Hall the latter, after assuring Stevens of his friendship and protection and telling him he could do some business with him, entered with him into an agreement, substantially to the effect, that for new Studebaker automobiles that Stevens might steal away from Lexington and bring him, he (Hall) would pay him from $100.00 to $150.00 per car, but that for automobiles stolen in Lexington he would not pay so much, thereby apparently leaving the price for stolen Lexington cars to be fixed by agreement when delivered.

In the same conversation Hall told Stevens, as stated by the latter, that in obtaining automobiles for him no bill of sale for any of them would be necessary; that he could leave them on some street for Hall to see them and then get in touch with him (Hall) at his office, and that after they were seen and accepted by Hall, he would re-

ceive pay for them at some designated point in the country near Lexington to which Stevens was to run them. Upon Stevens agreeing to this arrangement, he was asked by Hall when he could make delivery of some of the automobiles to him, in reply to which Stevens informed him that he would begin work at once. Stevens also testified in this connection that the above conversation had by him with Hall occurred and the agreement between them resulting therefrom entered into, in the presence and hearing of the appellant, Albert Barry, who, though taking no part in the conversation or agreement, remained in the room with them throughout the interview.

According to the further testimony of the witness, not later than ten minutes after the termination of this interview with Hall referred to, he succeeded in stealing a Studebaker ligt six automobile, which he found in the rear of a newspaper office and drove to a remote street. The theft of the car was immediately reported by him to Hall at his office in the presence of Barry. Thereupon Hall and Barry, preceded by Stevens to point out the stolen car to them, drove in Hall's automobile to where he had temporarily placed it, and there from the car in which they were seated inspected it, after which the stolen car, by Hall's direction, was driven by Stevens to where it was received by Hall and paid for. Stevens, however, in testifying as to the delivery of this particular car, said he was unable to remember whether it was put in a small garage Hall and Barry had on or near Wilson street, or delivered out on the road near Lexington, but subsequently positively testified that he was paid by Hall for this, the first stolen car delivered to him, $50.00.

Stevens was permitted by the court to testify, over the objection of the appellant, that prior to his delivery to Hall of the stolen Uri automobile he delivered to him six others stolen in Lexington, and four or five stolen in Louisville, all of which, with the possible exception of the one mentioned as the first sold him, were delivered on the road in or near a suburb of Lexington either to the appellant Barry for Hall, or to the latter and by him put in charge of Barry, who in each instance drove them away from the place of delivery.

It was likewise testified by Stevens that he had numerous conversations with Barry by telephone with respect to the delivery to Hall of the stolen automobiles that were procured by him (Stevens) in Louisville, some

of which conversations were initiated by Stevens and some of them by Barry, but all occurring with Stevens talking from his rooming house, or other place, in Louisville and Barry from Hall's office in Lexington.

Evidence corroborative of many of the material facts and circumstances brought out by the testimony of Stevens, was furnished by the testimony of other witnesses for the Commonwealth, one of whom, Dennis McCarty, a deputy county patrolman, usually in charge of Chief Frank Hall's office at night, testified that one night while he was alone in Hall's office a telephone call from the Scott hotel came to it after midnight, asking first if Barry and next if Hall was there. The inquiry was answered by a statement from McCarty that both were then out of the office. Whereupon he was told by the person at the Scott hotel that if either of them came to the office to have him call the Scott hotel; and when Barry shortly thereafter came to Hall's office and was told by McCarty of the telephone message from the Scott hotel and request that he call that hotel, he said he would do so and went into a telephone booth of the office and there had a telephone conversation with some person which McCarty was unable to hear. McCarty could not recall the date of these occurrences, but did not materially disagree with Stevens as to the hour they took place.

It is true McCarty testified that he thought he recognized the voice of the person by whom the telephone call from the Scott hotel was made as that of one Carl Minor; but Minor upon being introduced as a witness by the Commonwealth, denied that the telephone call in question was made by him, or that he had ever called Hall's office by telephone from the Scott hotel.

McCarty also testified that the telephone call mentioned by him was the only one he had ever received or knew to come from the Scott hotel to Hall's office; and was quite positive in the statement that the voice that called from that hotel on the occasion referred to was the same voice he had previously several times heard call by telephone to Hall's office from other hotels, or places, and ask for Hall or Barry.

Other evidence intended to corroborate the witness, Stevens, is found in the testimony of Dan Thomas and Steve Featherstone, witnesses for the Commonwealth. It appears from the statements of Thomas that during the years 1923 and 1924 he was employed as a night man at a garage on upper North street in Lexington owned

by Steve Featherstone, and that between three and four o'clock a. m. early in the year 1924, an automobile driven by Frank Hall stopped at the Featherstone garage for gasoline, five gallons of which was purchased by Hall, and by Thomas poured into a can and placed in his automobile. At that time the rear seat of the car was occupied by two men, neither of whom, if known to Thomas, owing to the insufficiency of the light, was identified by him. After obtaining the gasoline the party rode away in the car without disclosing their destination. Thomas thereupon entered on a ticket, as a charge against Hall, the price of the five galons of gasoline sold him and the date of its sale, which was the customary way of entering night sales of gasoline made from the garage on credit, such tickets being delivered to Featherstone on his arrival at the garage in the morning at the hour for beginning the day's business; and according to the testimony of both Featherstone and Thomas, when the latter arrived at the garage at seven o'clock on the morning following the sale of the gasoline to Hall, the ticket containing the charge therefor was given him by Thomas and the charge immediately and on the day of the sale entered by Featherstone in an account book or ledger kept for that purpose, after which the ticket was, as usual, destroyed.

The date of the sale of the gasoline to Hall, though not remembered by Thomas, was established by the entry on the ledger made by Featherstone from the sale ticket showing it to have been made January 31, 1924; also by the testimony of Featherstone identifying that entry and its correctness and that of Thomas to the effect that the sale ticket contained the same date shown by the ledger entry.

Yet other evidence tending to corroborate Stevens was furnished by the testimony of Catherine Murphy, a long distance telephone operator in the Louisville office of the Home Telephone Company, J. R. Humphries, Lexington, cashier of that company, and Edward B. Leach, occupant of the rooming house in which Stevens rented a bedroom, all to the effect that several long distance telephone calls and conversations between Stevens and Barry occurred prior and down to the time of the theft of the Uri car.

We are unable to agree with counsel for the appellant that Stevens, in the meaning of the law, was an accomplice of the appellant Barry in the commission of the crime of which he was convicted in this case. The theft

of the Uri car, which constituted the crime of grand larceny, was accomplished by Stevens alone. Barry, though shown by the evidence to have been informed of the plan by which Hall was to purchase of Stevens automobiles to be stolen by him, but was not present when the Uri car, or any other delivered to Hall by Stevens, was stolen by the latter. So in view of the state of case thus presented, Barry could not have been a participant in the theft of the Uri car by Stevens, and was not, therefore, an accomplice of Stevens in the commission of that crime.

On the other hand, it would seem equally true that the act of Stevens in delivering the stolen car to Barry for Hall, or to Hall by whom it was purchased and left in charge of Barry for removal to its intended destination, did not make Stevens an accomplice of Hall or Barry in the commission of the crime for which the latter was indicted and convicted, viz., the receiving of stolen property with the knowledge that it had been stolen. The crime of Stevens was that of stealing the car, that is, grand larceny. Therefore, his asportation, sale and delivery of it to Hall and Barry, or to the latter by direction of Hall, were but acts indicating that his taking of the car was with the unlawful and felonious intent on his part to permanently deprive the owner thereof and convert it to his own use, all of which were ingredients or elements of grand larceny.

In view of his previous theft of the Uri car, committed by him alone, and which act itself constituted the crime of grand larceny, Stevens could not have been subjected to a criminal prosecution for the offense of receiving stolen property, a necessary ingredient of which is that the property knowingly received by the accused as stolen property must have been stolen by a person other than himself. But the appellant Barry is not so situated, for his act of receiving from Stevens the stolen car with the knowledge that the latter had stolen it, constituted a separate and wholly distinct crime, viz., that of knowingly receiving stolen property, which, as declared by this court, is not a degree of the crime of grand larceny. Stone v. Commonwealth, 24 Rep. 10.

If, therefore, the witness, Stevens, could not have been jointly indicted with the appellant for the crime of which he was in this case convicted, we fail to see how he can be regarded as an accomplice of the latter in the commission of that crime. In the recently decided case of Solomon v. Commonwealth, 208 Ky. 184, the legal mean-

ing of the word "accomplice" is thus defined in the opinion:

> "An accomplice is one of several concerned in the commission of a felony or misdemeanor; and in order to make one an accomplice, it is necessary that his criminal participation in the crime charged be shown by the evidence. And to constitute a witness an accomplice, he must sustain such a relation to the criminal act charged as that he could be jointly indicted with the accused for its commission. . . . Roberson's Crim. Law, sections 86-969; White v. Commonwealth, 5 R. 318; Sizemore v. Commonwealth, 10 R. 1; Richardson v. Commonwealth, 166 Ky. 570; Levering v. Commonwealth, 132 Ky. 666; Anderson v. Commonwealth, 181 Ky. 310; Bullington v. Commonwealth, 193 Ky. 529."

Notwithstanding the failure of the evidence to show that Orville Stevens, the Commonwealth's principal witness, was an accomplice of the appellant, Albert Barry, in the commission of the crime of which he was convicted, the trial court, though apparently of the belief as expressed in a written opinion that Stevens was not an accomplice, with a view of guarding against a possible mistake on that point, treated him as such and gave, among other instructions intended for the guidance of the jury, the one with respect to the effect to be accorded the testimony of an accomplice, required by section 241, Criminal Code, which provides:

> "A conviction can not be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof."

In view of our expressed conclusion that Stevens cannot be regarded an accomplice of the appellant in the commission of the crime charged in the indictment, we must declare the giving of this instruction unauthorized. However, the error thus committed by the trial court is not one of which the appellant does or can complain, for the giving of the instruction in question resulted from the insistence of his counsel that Stevens was an accomplice and the court's acquiescence in that contention. On

the other hand, however erroneous the instruction, as it did not serve to prevent the jury from returning the verdict whereby the appellant was found guilty of the offense charged, counsel for the Commonwealth can, it would seem, have little cause to complain of it.

The appellant's complaint that the testimony of Stevens and that of other witnesses, admitted in corroboration thereof, with respect to his arrangement with Frank Hall to furnish him with stolen automobiles, and of his sale and delivery to Hall in the presence of appellant or his delivery to the latter by direction of Hall, of automobiles stolen by Stevens other than the Uri car, was incompetent and should have been excluded by the trial court, is without merit. As according to the testimony of Stevens his agreement with Hall to furnish and sell him automobiles to be stolen by Stevens, was made in the presence and with the knowledge of the appellant, and such of the automobiles, including the Uri car, as were stolen and sold by Stevens to Hall under this agreement, were in each instance delivered by him to Hall with the appellant present and at once placed in the latter's custody, these facts bring the evidence complained of within the rule declaring it competent announced by the several authorities cited below and which will presently be considered by us.

The grounds upon which the admissibility of such evidence is rested are well set forth in Greenleaf on Evidence, volume 1, section 53, as follows:

"In some cases, however, evidence has been received of facts which happened before or after the principal transaction, and which had no direct or apparent connection with it, and therefore their admission might seem, at first view, to constitute an exception to this rule. But those will be found to have been cases in which to the knowledge or intent of the party was a material fact, on which the evidence, apparently collateral and foreign to the main subject, had a direct bearing, and was therefore admitted. . . . "

Again, in volume 3, section 15 (Greenleaf on Evidence) is found this further statement on the same subject:

"In the proof of intention, it is not always necessary that the evidence should apply directly to the

particular act with the commission of which the party is charged, for the unlawful intent in the particular case may well be inferred from a similar intent proved to have existed in other transactions done before or after that time. . . . ''

In Bishop's New Criminal Procedure, volume 1, section 1125, the author's approval of the rule of evidence in question is thus declared:

"Whole Transaction.—As explained under the doctrine of *res gestae,* wherever a part of a transaction appears in evidence the rest is thereby made admissible. So the entire transaction wherein it is claimed the wrong in issue was done may be shown, though it includes, also, other crimes, and even though the transaction was a continuing one, or transpiring in parts on different days."

In continuing, in section 1126 of the same volume, his discussion of the same doctrine, the author further declares:

"The intent, knowledge or motive under which the defendant did the act charged against him, not generally admitting of other than circumstantial evidence, may often be aided in the proofs by showing another crime, actual or attempted."

Though ordinarily such evidence is incompetent, as said in Romes v. Commonwealth, 164 Ky. 334:

"There are, however, a few exceptions to this general rule applicable to cases in which it is necessary to establish identity, or guilty knowledge, or intent, or motive for the commission of the crime under trial, or when other offenses are so interwoven with the one being tried that they cannot well be separated from it in the instruction of relevant and competent testimony, or when the independent offense was perpetrated to conceal the crime for which the accused is on trial. Morse v. Commonwealth, 129 Ky. 294."

It will be found from an examination of the opinion in each of the following additional cases, all decided by this court, that they recognize the competency of the evidence under consideration and declare it admissible in

a case presenting such a showing of facts and circumstances as were made to appear in the instant case. Tye v. Commonwealth, 3 Rep. 59; Thomas v. Commonwealth, 1 Rep. 122; O'Brien v. Commonwealth, 115 Ky. 608.

In our opinion the evidence in question was clearly competent, as it conduced to prove the appellant's guilty knowledge of the arrangement between Stevens and Hall under which the stolen Uri automobile and others, previously stolen by Stevens, were by him sold and delivered to Hall in the appellant's presence; also to show his connection with the delivery of such cars and identify him as the agent of Hall for receiving them as well as the Uri car; and likewise the intent and motive with which the cars were received by him for Hall. It also appears from the record that in admitting this evidence the trial court in apt language, and as required by the rule of evidence permitting its introduction, admonished the jury of the purpose of its admission, and confined their consideration of it to that purpose alone.

It is manifest from what has been said of the evidence that it furnishes no ground for the appellant's complaint of the refusal of the trial court to give an instruction peremptorily directing the acquittal of the appellant by verdict of the jury. There was no evidence introduced in behalf of the appellant and that of the Commonwealth was uncontradicted. It is true that Stevens, the principal witness for the Commonwealth, is a confessed thief, but that fact was necessarily known to the jury and it is not for this court to say that his testimony should, for that reason, have been disregarded by them. Moreover, even a thief's testimony may be so corroborated by the testimony of other witnesses, or by circumstances, as to leave no doubt of its truth. And it must be admitted that much of the testimony of Stevens material to a showing of the appellant's guilt of the crime charged, was strongly supported by the facts and circumstances furnished by the Commonwealth's evidence introduced in corroboration thereof, and all of which we think was competent. In view of which no reason is apparent for sustaining the appellant's further contention that the verdict of the jury was unsupported by, or flagrantly against, the evidence.

Obviously, this case cannot be differentiated from the many others in which has been announced the well

recognized rule, that it is the province of the jury to pass upon the credibility of the witnesses and also the evidence, and from it as a whole determine the truth of the matter in controversy, in doing which they may accept the testimony of one witness or set of witnesses and rest their verdict upon his or their testimony alone. And where there is any evidence conducing to establish the guilt of the defendant, it is not the province of the Court of Appeals to disturb the verdict. 'Indeed, in no case will it do so, unless the verdict be wholly without support from or is flagrantly against the evidence.

The instructions, though complained of, are not seriously criticized by counsel for the appellant; and it is sufficient to say that with the exception of the one with respect to the effect to be given the testimony of an accomplice, which though unauthorized was not prejudicial to the appellant, the instructions seem to have properly presented for the guidance of the jury all the law applicable to the case. Wherefore, the judgment is affirmed.