AIRLINE MOTOR COACHES, INCORPORATED, V. J. J. CAVER.

No. A-2350. Decided January 25, 1950.
Rehearing overruled February 22, 1950.
(226 S. W., 2d Series, 830.)

522

Mr. Justice Griffin, joined by Justices Sharp and Taylor, dissenting.

*Thompson & Stripling,* of Nacogdoches, *Strasburger, Price, Holland, Kelton & Miller,* and *Hobert Price,* all of Dallas for petitioner.

It was error for the trial court to hold that petitioner was guilty of negligence in permitting a passenger to take his portable radio into the bus, and the Court of Civil Appeals erred in affirming said judgment. Jackson v. Boston. Elev. Ry. Co., 217 Mass. 515, 105 N. E. 379; Williams v. New Jersey-N. Y. Transit Co., 113 Fed. (2d) 649; Cincinnati Trac. Co. v. Hamburger, 84 Ohio 456, 95 N. E. 1148.

*Fulmer and Fairchild,* and *R. W. Fairchild,* all of Nacogdoches, for respondent.

The holding of the Court of Civil Appeals that it could not be said that there was no evidence supporting the finding of the jury that the driver of the bus was negligent in allowing the passenger to take the radio into the interior of the bus, instead of taking it himself and seeing that it was safely stored is supported by Houston Elec. Co. v. Bragg, Com. App. 276 S. W. 641; 38 Am. Jur. 707, 679.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

Petitioner, an inter-city motor bus carrier, seeks relief here from unfavorable judgments in both courts below in a suit against it by J. J. Caver, respondent, for personal injuries said to have been caused to respondent's wife in 1944 while a passenger on petitioner's bus by a portable radio of a fellow passenger which fell from an overhead luggage rack into the head of Mrs. Caver. The case has been tried twice, the last trial leading to three opinions in the Court of Civil Appeals. Of these, the first two held there was no evidence to sustain the sole finding of negligence, while the final one held the contrary over the dissent of Chief Justice Coe. 222 S. W. (2d) 286.

The jury submissions on liability with the corresponding answers are as follows:

"SPECIAL ISSUE NO. 2.

"Do you find from a preponderance of the evidence that defendant's bus driver was guilty of negeligence in permitting the passenger to take such portable radio into the bus?

"Answer 'Yes' or 'No'.

"ANSWER: YES."

"SPECIAL ISSUE NO. 4.

"Do you find from a preponderance of the evidence that defendant's bus driver knew that the portable radio had been placed

upon the rack above Mrs. Caver's head in time so that he could have removed the same from the rack before it fell?

"Answer 'YES' or 'NO'.

"ANSWER: NO."

### "SPECIAL ISSUE NO. 7.

"Do you find from a preponderance of the evidence that the portable radio was upon the rack above Mrs. Caver's head for a sufficient length of time before it fell so that the bus driver by a reasonable inspection could have discovered it in time to remove it from the rack before it fell?

"Answer 'YES' or 'NO'.

"ANSWER: NO."

The jury also found the alleged injuries to have proximately resulted from the negligence found by its answer to Special Issue No. 2. As to this latter issue, which is the crux of the case, petitioner's timely objections to it for lack of supporting evidence, and petitioner's motions on the same ground for an instructed verdict and judgment notwithstanding the verdict were overruled. Petitioner raised the same question again in its unsuccessful motion for new trial, both directly and by complaint (in paragraphs 10, 11 and 12) of the court's action on the exceptions and earlier motions mentioned.

■ In the Court of Civil Appeals petitioner's only "point" with regards to the foregoing—which is substantially the same as its corresponding point in this court—reads as follows:

"The error of the trial court in refusing to hold that as a matter of law it could not be negligence for the defendant bus company to permit a passenger to bring with him aboard the bus a small portable radio. (Germane to Assignments of Error Nos. 1, 2 and 3, par. 10, 11 and 12, Amended Motion for New Trial, Tr. 33-4)". Respondent in the main presentation of the case below evidently construed this "point" as presenting the question of lack of evidence to support the answer to Special Issue No. 2 and briefed his reply accordingly, but contended on the first motion for rehearing that the question was not adequately presented or briefed by petitioner and now asserts that we are accordingly forbidden to consider it. This contention was righly rejected by the Court of Civil Appeals in so far as it applied to that court, and we reject it here. The argument is largely technical in that the alleged omission plainly did not interfere

with a fair, complete or orderly development or consideration of the case from the standpoint of either the parties or the courts, but even technically we consider it not well taken. As before stated the motion for new trial raised the same question both directly and by clear reference in its paragraphs 10, 11 and 12, which are the same paragraphs included in its "point" above quoted. It was not necessary for the "point" itself to state in so many words that the jury finding was unsupported by evidence. Points "will be sufficient if they direct the attention of the court to the error relied upon", and "Assignments of error * * * may be cited by reference only." Rule 418(b), T. R. C. P. "A substantial compliance" with the briefing rules "will suffice in the interest of justice." Rule 422. See also Rule 1. As to the petitioner's brief below, while individual ideas may well differ over what is proper effort or method in briefing a question, this much at least is certain—that petitioner's counsel thought he was arguing the error of the trial court in overruling objections and motions expressly based on the ground of "no evidence", that the court below so understood it and that respondent's reply brief proceeded as if on the same understanding. In our own view petitioner's brief did argue the point of no evidence, and beyond any doubt did it so as to effect "a substantial compliance" with the corresponding rules. Rule 422, supra. None of our decisions or rulings cited for respondent are, we think, contrary to the conclusions above expressed.

■ Proceeding to the crucial question of whether there was evidence to support the finding of petitioner's negligence in permitting the radio to be taken on board, we have concluded that there was not.

The status of the evidence on the point may be summarized as follows: The bus in question was southbound from Marshall or thereabouts to Beaumont. At Tatum, which is a few miles out of Marshall, a soldier passenger, bound for Beaumont, came on board with a portable radio. This was long before the respondent's wife boarded the bus. She first boarded it at Kirbyville—which is over a hundred miles southwardly from Tatum. There is no evidence that the bus was crowded when the radio was brought on board at Tatum or at any time thereafter before it reached Kirbyville, though it was evidently crowded from Kirbyville onward. The appearance and conduct of the soldier was unexceptional, except that on being addressed by the driver, he addressed the latter by the nautical term "Skipper" in replying. The evidence varied highly as to the size of the radio, the largest version being that of respondent Caver's

witness, Mrs. Troutman, who called it a medium-sized radio about fourteen or fifteen inches "square". There was some evidence that it was made of plastic, and all agreed that it was of the "portable" type. There was no evidence of any extraordinary characteristics of the article arising from its plastic cover or otherwise that might cause it to escape from a luggage rack when ordinary luggage of the same dimensions would not do so, and we judicially know that a radio fifteen inches square is about the same bulk as a small-sized handbag or "weekend" bag. The bus was equipped with overhead baggage racks, and there is no evidence that they were such as to be more dangerous for stowage of radios than for stowage of other luggage of equivalent size and square shape, nor any contention that they were other than the usual type of racks found on most inter-city busses. Assuming the maximum size ascribed to the radio, there probably was evidence from which the jury might have inferred that it would be difficult for a passenger to stow such an article at his feet while seated or under the seat. There was also testimony from which the jury might properly conclude that the carrier had a rule forbidding radios to be stowed in the racks, and evidence to the effect that when the soldier brought the radio on board, the driver tried to persuade him to check it in the baggage compartment but finally let him bring it in with him on the promise not to put it in the rack. The only evidence as to the object of the rule was the driver's further statement that it was designed to avoid numerous small claims for damage to the delicate mechanism of such instruments. There was no evidence of any rule against bringing radios into the bus. The accident occurred a few miles below Silsbee or about forty miles toward Beaumont from Kirbyville where Mrs. Caver had boarded the bus. At the time, Mrs. Caver sat in a special seat in the aisle toward the rear of the vehicle, and the radio evidently fell from the rack above her onto her head. It was the same radio which the soldier, who came aboard over one hundred and forty miles back, had brought in with him. It apparently fell from some cause other than an unusual motion of the bus.

■ No current authority need be cited for the well-known rule that, within reasonable limits, a passenger is entitled to bring luggage with him into a public conveyance, be it railway car, street car or motor bus. It was succinctly stated years ago in Gulf, C. & S. F. Ry. Co. v. Shields, 9 Texas Civ. App. 652, 29 S. W. 652, error refused, in which a slightly inebriated passenger named Harris brought on board with him a sack filled with iron, groceries and a jug of alcohol, the jug falling out

and causing a fire that burned a fellow passenger. The latter alleged "that defendant negligently allowed the said sack to be brought into the said train and into the car, and placed on a seat." See 9 Texas Civ. App. 652, 28 S. W. 709. The court on the final appeal said: "It cannot be successfully denied that Harris had the right as a passenger to carry baggage on the train, and that he had the right to carry it in a sack, if he chose to do so." The court added: "We think it is equally clear that, in the absence of some information or circumstance indicating that the sack contained something dangerous to other passengers, it was not the duty of appellant's conductor or any other employe to open the sack and examine its contents." (9 Texas Civ. App. 652, 29 S. W. 653.) At the same time it is of passing interest to note that the rule has been applied not only to the sack of the poor inebriate but also to such things as a metal pipe and bag of tools carried into a city street car by a workman (Wood v. Philadelphia Rapid Transit Co., 260 Pa. 481, 104 Atl. 69, L. R. A. 1918 F. 817); a package containing a leather crupper for a horse (Louisville & I. R. Co. v. Rommele, 152 Ky. 719, 154 S. W. 16, (16 Ann. Cas. 1915B, 267); a brief case (Williams v. New Jersey-New York Transit Co., 113 Fed. 2d 649 (2d Cir. 1940), as well as the conventional hand bag (Jackson v. Boston Elevated Ry. Co., 217 Mass. 515, 105 N. E. 379, 51 L. R. A. N. S. 1152; Ross v. Pennsylvania R. Co., (Mun. Ct. of App.) D. C., 55 Atl. 2d 346).

█ It is almost superfluous to add that where the passenger brings on board what he has a right to bring, it is not negligence on the part of the carrier to permit him to bring it. Conversely it could well be negligence to permit a passenger to bring in with him what is obviously an open can of gasoline, or an uncrated dog. 10 Am. Jur., "Carriers", sec. 1306 et seq. Even where the luggage admitted is legitimate, negligence may arise from circumstances such as defective construction of luggage racks or where the luggage somehow comes to create a dangerous situation of which the carrier's agents knew or would have known if they had fulfilled their duty (as the driver did in the instant case) of properly inspecting or policing the vehicle. These latter principles furnish the test of liability universally applied to cases of apparently legitimate luggage injuring passengers by falling from overhead racks. In Louisville, I. R. Co. v. Rommele, supra, for example, it was said:

"The evidence shows that the conductor did not see the package in the rack, or have his attention called to its presence, and there is no evidence even tending to show that there was anything in the size or appearance of this package, or the man-

ner in which it was placed in the rack, to attract attention or to put the conductor on notice that it was not a suitable package to put in the rack, or to indicate that the motion of the car might cause it to fall, or that carrying it in the rack would probably result in injury to a passenger; on the contrary, we would say that it was just that sort of package in size, appearance, and weight for which racks in passenger cars are intended.

"With the evidence in this condition, we think the court should have directed a verdict in favor of the company." 154 S. W. 17.

See also Ross v. Pennsylvania R. Co.; Williams v. New Jersey-New York Transit Co.; Jackson v. Boston Elevated Ry. Co., all supra; 10 Am. Jur., supra; Annotation 140 A. L. R. 1194, 1200. The same principle of actual or imputed knowledge of existing danger on the part of the carrier applies in the general field of injuries by passengers to fellow passengers, as in Sure v. Milwaukee Electric Ry. & Light Co., 148 Wis. 1, 133 N. W. 1098, 37 L. R. A. (N. S.) 724, Ann. Cas. 1913A, 1074, in which the court—overturning a special jury finding to the contrary—held that a street car motorman was not chargeable with notice that a boy passenger would voluntarily release an old-style brake handle, causing it to fly around and strike a fellow passenger. See also Annotation 140 A. L. R., supra; 10 Am. Jur., supra, sec. 1349. If the carrier's diligence in protecting passenger A is to be measured by a presumption that passenger B will *probably* so conduct himself or manage his baggage as negligently to injure A, then for all practical purposes, the carrier would be an insurer. But the presumption would seem to be just the contrary. Wood v. Philadelphia Rapid Transit Co., supra. Similarly, as in the Wood case and in Gulf, C. & S. F. Ry. Co. v. Shields, supra, the character of a piece of baggage as something rather out of the ordinary does not necessarily suggest the probability of danger when allowed to enter a public vehicle.

There is no substantial extension of the above principles involved in the Commission of Appeals' decision of Houston Electric Company v. Bragg, 276 S. W. 641 (motion for rehearing overruled, 280 S. W. 118), heavily relied on by respondent and the final majority of the court below. In that case, a passenger was allowed to bring on board a small city street car, which was heavily crowded at the time, a definitely large type of suitcase and to take it past the only available storage space at the front into the body of the car where, being too large to be held in the owner's lap (assuming he should find a seat), it necessarily had to be placed in the aisle in the way of passengers

coming and going according to the many stops made by such a vehicle. Under these circumstances, there was held to be a fact question as to whether the motorman was not guilty of "lack of care in permitting the obstruction to be placed there", the court explaining that "The negligence here alleged does not depend on knowledge of the presence of the obstruction after it is placed in the aisle, but is based on the anticipation ·of the obstruction and failure to use care to prevent it." This is, in different words, but another application of the rule of a dangerous situation of which the carrier knew or by the exercise of reasonable diligence would have known. Certainly if the suitcase owner had told the motorman he was going to stow it in the aisle, or if the motorman had told the passenger so to stow it, the situation would be for all practical purposes the same as if the motorman knew it was there. The facts of the case amounted to just about that. When the passenger carried the suit case past the space beside the motorman, which was the only place in which it could have been stowed except the aisle, the motorman for all practical purposes knew it was stowed in the aisle, so as to create a dangerous hazard. In theory the case is similar to one in which the carrier's agent sees a passenger bring a clearly dangerous instrumentality into a bus or car yet permit him to do it. Both the dangerous situation and the carrier's knowledge of it thus begin when the article comes into the car. But let us suppose that instead of a large suitcase, the offending article in the Bragg decision had been an oversized ladies purse or a sizeable package purchased at the store, either of which could have been kept in the passenger's arms or lap with less inconvenience than, say, holding a two-year-old child? Certainly the result would have been different, as it would also have been even with the big suitcase, if there were no evidence of a then crowded condition of the car, or if there were some other storage space available within the car— such as baggage racks of sufficient capacity. Assuming that in the case at bar the offending luggage had been an ordinary medium-sized hand bag, instead of a portable radio, a parallel with the Bragg case would exist only if the bus driver had seen the bag stowed in a dangerous manner in the rack or had negligently failed to see it so stowed; and the jury findings that he did neither would clearly have ended the litigation. As already suggested, there is no presumption, when baggage racks are provided, that the passenger will stow his luggage there in a careless manner, so as to endanger the luggage itself or the passengers, including himself. The "invitation" evidenced by baggage racks is no invitation to commit negligence. Even if a passenger brings aboard some article that obviously would not

rest safely in a baggage rack, it is yet not ordinarily negligence merely to let him enter the vehicle with it, because the presumption is that he will not risk putting it where it plainly does not belong, unless—as in the Bragg case—special circumstances are such as to make the contrary likely to occur.

■■ Such being the rules as to luggage generally, why in the instant case should it be negligence to allow a medium-sized portable radio to come on board? If it had been a hand bag, brief case or package of the same external characteristics, obviously there would have been no negligence. It is said that the company rule makes a difference. But, as stated, the rule was only one against stowing radios in the racks. By necessary implication it permitted them to be brought on board. How can a rule that permits radios to come on board prove that it is negligence to permit them on board? If it be urged, despite lack of any evidence to this effect, that the rule is for the protection of passengers from being hurt by falling radios, rather than merely protecting the company against vexatious claims for damage to the delicate mechanism of the radios themselves, as the driver testified, the only logical relevance of the rule to the present case would be that it might of itself impose on the driver a duty to take radios out of racks if he saw them there and to make inspections against the possibility of their being put there without his knowledge; and this duty, if it should exist, is found by the jury to have been discharged. Even where a safety rule is violated, the violation is not necessarily evidence of negligence. In 10 Am. Jur., supra, sec. 1642, it is said:

"However, rules of a carrier not known to, and relied upon, by the passenger are not admissible in evidence in an action against it for injury to him, where they require of the employees a greater duty than the law imposes upon it. In an action against the operator of a trolley car for injury to a child in jumping from the front platform of the car, which he reached because the doors were not closed, evidence is not admissible of a rule requiring motormen to keep such doors closed under penalty of suspension." Much less should we say that, because a rule permits something to be done, it is negligence to do it.

There is, as stated, no testimony about the visible characteristics of the radio or of its passenger-owner, that bespoke a dangerous situation when the radio came on board. The bare fact that the cover was made of plastic rather than something else is obviously not significant. Nor do we think the driver's preference to have the radio kept out of the bus is evidence

of negligence in allowing it to come in. He gave as his reason the desire to avoid claims for damage to radios. Even if the jury chose to disbelieve this reason, while yet believing his statement that he preferred to keep the radio out, we have left only an unexplained action on the driver's part. Surely that is not evidence that the radio was a dangerous instrumentality, so peculiarly disposed to jump out of a rack or otherwise injure passengers, that its mere admission into the bus was like admitting an uncrated animal or can of explosive. Nor is it evidence that, if admitted, the radio would likely be so carelessly stowed by its passenger-owner as to risk damage to it and the persons of the passengers, including the owner. Especially in the light of common knowledge about radios, which are about as numerous in this nation as bath tubs and automobiles, would it be unreasonable to permit a jury speculation that the driver's attitude reflecting his knowledge of, and so the existence of, peculiar dangers inherent in radios or radio owners not otherwise suggested by the record.

The foregoing conclusions dispose of the case and render unnecessary any consideration of petitioner's point based on allegedly improper argument of respondent's counsel to the jury.

The judgments of both courts below are reversed. Since the case has evidently been fully developed in the course of its two trials, judgment is here rendered that J. J. Caver, respondent, take nothing.

Opinion delivered January 25, 1950.

MR. JUSTICE GRIFFIN, joined by Justices SHARP and TAYLOR, dissenting.

I am of the opinion that the judgment of the Court of Civil Appeals affirming the judgment of the trial court on jury findings should be affirmed.

We start out with certain well-settled legal principles:

1. If there is *any* evidence in the record to support the jury's findings we must affirm the cause. Texas Power & Light Co. v. Doering Hotel Co., 139 Texas, 351, 162 S. W. (2d) 938 (2); Schelb v. Sparenberg, 133 Texas 17, 124 S. W. (2d) 322; Anderson, Clayton & Co. v. State, 122 Texas 530, 62 S. W. (2d) 107; Merrell et ux. v. Dorothy Hume Timmons et al., 138 Texas 250, 158 S. W. (2d) 278; Beer v. Landman, 88 Texas 450, 31

S. W. 805; 11 Tex. Jur. p. 871, Courts, sec. 113, and authorities there cited.

2. On error to review judgment of Court of Civil Appeals affirming trial court's judgment, Supreme Court must consider all testimony in light most favorable to support trial court's judgment. Southland Life Ins. Co. v. Lawson, 137 Texas 399, 153 S. W. (2d) 953; Henderson v. Shell Oil Co., 146 Texas 467, 208 S. W. (2d) 863(8) ; 3 B Tex. Jur. p. 443, Appeals Error sec. 935, and authorities there cited.

"The holding of the honorable Court of Civil Appeals that the undisputed evidence showed the train crew to be the servants of the construction company, and within their exclusive dominion, requires us, in reviewing the correctness of its decision, to search the record for, and give consideration to, the facts and circumstances in the record which are most favorable to the contention of the plaintiff in error on the question as to whether there is evidence of probative force tending to show that the train crew whose negligence was complained of were the agents and servants of the defendant in error, or the joint servants of it and the said Kenefick-Hammond-Quigley Construction Company. The jury has found favorably to the contention of the plaintiff in error upon this question. If there is any evidence to support their finding, the case should not have been reversed and rendered against the plaintiff in error. *To determine this question it is not now essential or appropriate to present the evidence herein which is favorable to the opposite contention,* the inquiry being directed entirely to a determination whether there was any evidence to support the verdict of the jury." (Emphasis ours.) Manning v. Beaumont, S. L. & W. Ry. Co., 181 S. W. 687.

3. It is the jury's province to weigh all of the evidence and to decide what credence should be given to the whole or to any part of the testimony of each witness. The jury are the judges not only of the facts proved, but of the inferences to be drawn therefrom, provided such inferences are not unreasonable. Lockley v. Page, 142 Texas 594, 180 S. W. (2d) 616; Sid Katz, Inc. v. Walsh & Burney Co. et al., 142 Texas 232, 177 S. W. (2d) 49; Stephenville, N. & S. T. R. Co. v. Shelton (Tex. Com. App.) 208 S. W. 915, 916; 3 B Tex. Jur. p. 435 top of page; 36 Tex. Dig. p. 204, Trial, sec. 142, and authorities there cited.

Respondent relied upon three grounds of negligence for a recovery, the first one was that the operator of the bus was negligent in permitting the fellow passenger to take his port-

able radio aboard the bus with him, although the operator "* * * at the time realized and appreciated or by the exercise of even ordinary care should have realized and appreciated that there was danger that the said passenger might place the said portable radio in the rack over the heads of other passengers and that the said portable radio might, as it did, fall from said rack and strike one of defendant's passengers and inflict serious and painful injuries upon them, as it did.

The duty owing by the carrier to the passenger resulting from the falling of baggage from racks is well stated as follows:

"A railroad company is bound to exercise more than a reasonable degree of care in protecting its passengers from the risk of baggage falling from racks provided for its stowage. The furnishing of racks for the purpose of stowing hand baggage invites passengers to use them to the extent of the apparent limit of safety and is generally viewed as imposing on the railroad, when the racks are so used, the duty of operating its trains so as not to endanger passengers sitting in the seats underneath the racks. However, the viligance and caution of the carrier in this respect are obviously proportioned to the hazards of the particular situation." 10 Am. Jur. p. 198, Carriers, sec. 1310.

"The true rule, as laid down by this court, is that given in the case of International & G. N. Ry. Co. v. Halloren, 53 Texas 46, 37 Am. Rep. 744, as follows:

" 'Railroad companies, however, are not insurers of the safety of their passengers further than could be required by the exercise of such a high degree of foresight as to possible dangers, and such a high degree of prudence in guarding against them, as would be used by *very cautious, prudent, and competent persons under similar circumstances.*' (Citing numerous authorities.) * * * (Emphasis ours.)

"In no case called to our attention has it been held by any appellate court that the degree of care defined in the Halloren case is incorrect, and we are convinced that the definition there given is the accepted one in this state." Gulf C. & S. F. Ry. Co. v. Conley, 113 Texas 472, 260 S. W. 561, 1.c. 562, 1st col., 32 A. L. R. 1183.

This court held in the case of Houston Electric Co. v. Bragg (Comm.) 276 S. W. 641 that it was a jury question as to whether or not the motorman of the street car was negligent in permit-

ting a passenger to take into the car the suitcase over which Mrs. Bragg stumbled and thereby was injured.

In the Bragg case the trial court had sustained certain exceptions of the Electric Company to Mrs. Bragg's petition wherein she alleged as negligence the failure of the company to have a conductor aboard the street car to see that the aisles were left free of obstructions and particularly the suitcase over which she stumbled. That left Mrs. Bragg's petition only with her allegations as to the negligence of the motorman in permitting the passenger to take the suitcase aboard. Evidence was heard on these allegations, but at the close of the testimony the trial court refused to submit any issue to the jury and gave the jury instructions to bring in a verdict for defendant, which was done. On appeal, the Court of Civil Appeals (264 S. W. 245) at Beaumont held that the sustaining of the exceptions was error. It also held:

"* * * It may be that the question will be for a jury to say whether the motorman should discharge the duty of protecting his passengers 'against all dangers that are naturally and according to the usual course of things to be expected' by observing his passengers as they enter the car, and preventing them from carrying with them to their seats instruments or baggage that might prove a source of danger to the other passengers. Giving full recognition to the rule that a passenger has the right to carry with thim into the car his personal baggage and to dispose of it in the car, yet if the nature of the baggage is such, because of its size or otherwise, that a motorman should have anticipated danger to his passengers from such baggage, the duty would devolve upon him to see that the baggage was properly disposed of. In certain instances, it would be for a jury to say whether that duty should be discharged by preventing the passengers from carrying the baggage with him to his seat."

When the case reached the Supreme Court, after affirming the Court of Civil Appeals in its ruling on the demurrers, the court said:

"(5) We are also of opinion that the trial court erred in peremptorily instructing a verdict for plaintiff in error. After the court had required the defendant in error to by amendment eliminate her allegation, based on the failure to furnish some person with the duty to see that the aisle was kept free of obstruction, there still remained an allegation that plaintiff in error negligently permitted the suitcase to be placed in the

aisle, and to be there at the time the car was stopped for her to alight therefrom. There was evidence to support every material allegation with reference to this issue tendered in the pleadings, and the issue should have been submitted to the jury.

"The issues tendered in the pleadings in this case should not be confused with those cases in which it is held that mere proof that the accident occurred is not proof from which it can be inferred that the carrier knew, or by exercise of diligence should have known, that the obstruction was in the aisle. *Here the alleged negligence is lack of care in permitting the obstruction to be placed there. The negligence here alleged does not depend on knowledge of the presence of the obstruction after it is placed in the aisle, but is based o nthe anticipation of the obstruction and failure to use care to prevent it.*" (Emphasis ours.) 276 S. W. 643.

I will not attempt to set out the evidence in detail as the opinion of the Court of Civil Appeals does this at great length.

The evidence justifies the logical inference that there was a regulation on the part of the bus company preventing passengers from stowing radios in the baggage rack. The driver remonstrated with the soldier at the time he became a passenger about his taking the radio aboard, and tried to get the soldier to deliver the radio to the driver to be placed in the baggage compartment.

There is evidence in the record justifying a jury finding to the effect that every seat in the bus was full at the time the soldier got on the bus as a passenger and that the driver knew the soldier could not place the radio in the seat beside the soldier as the driver instructed the soldier to do. There is also evidence in the record which would justify a jury in finding there was not room under the bus seat to stow the radio as the bus driver also directed. Giving the evidence the most favorable meaning to which it can be construed in order to uphold the jury's verdict—as we must do—I think there was evidence to go to the jury supporting respondent's allegation of negligence on the part of the bus driver in permitting the soldier to take the radio aboard with him. And I also think there is evidence to support the jury's answer to this issue.

"It has been said that 'a violation of rules previously adopted by a defendant in reference to the safety of third persons has generally been admitted in evidence as tending to show negli-

gence of the defendant's disobedient servant for which the defendant is liable.'

"\* \* \* \*

"A rule or regulation may be viewed as indicating the carrier's appreciation of danger with relation to the matter sought to be regulated. Negligent enforcement of such a rule, papably designed to render safe a situation dangerous if unregulated, serves to engage the carrier's liability. Shearman & Redfield on Negligence, Rev. Ed., Zipp, Vol. 3, sec. 506, pp. 1281 & 1282.

Paraphrasing the language of the Commission of Appeals in the case of Houston Electric Co. v. Bragg, 276 S. W. 641 (judgment adopted by the Supreme Court). The bus company owed to Mrs. Caver the duty to exercise that high degree of care which a very cautious and prudent person would have exercised, under the facts alleged, to have prevented her injury. Whether the exercise of such care required it to prevent the passenger from carrying the radio aboard under the circumstances of this case, would depend upon the conclusion which reasonable minds would reach from the facts stated. If it can be said that all reasonable minds must conclude that it would be unreasonable to require that the bus driver prevent the passenger from taking the radio aboard with him, under the circumstances here alleged, the duty to exercise care in this respect, as a matter of law, does not exist. If, on the other hand, reasonable minds might differ as to whether the bus driver should prevent the passenger from taking the radio aboard the bus with him, the failure to prevent the radio from being taken aboard would be a predicate upon which negligence could be based.

It seems to me that the majority opinion disregards all evidence favorable to the jury verdict and the judgment of the two courts below; and only considers the evidence which is against the verdict. This is not the law, but directly contrary to the law governing us in this case, under this record.

The quotation in the majority opinion from 10 Am. Jur., sec. 1642 that rules of a carrier are not admissible in evidence, is from a New York case wherein it is said that only ordinary care was required to be exercised by the carrier to prevent injury to the passenger. Such is not the degree of care required in this state and the case of Gulf C. & S. F. Ry. Co. v. Shildes, 9 Texas Civ. App. 652, 28 S. W. 709, cited by the majority, expressly so holds. The Halloren case referred to in the extract from Gulf, C. & S. F. Ry. Co. v. Conley, 113 Texas 472,

260 S. W. 561, 32 A. L. R. 1138, quoted by me above, is quoted in the Shields case as authority for rejecting the contention in the New York and Pennsylvania cases cited that only ordinary care is required.

On the second point I agree with the holding of the Court of Civil Appeals for the reasons stated, and will not discuss the matter further.

Believing that there is evidence in this record to sustain the jury's answers and believing that we are not to constitute ourselves a jury, but must sustain the jury's finding, I would affirm the judgments of both courts below.

Opinion delivered January 25, 1950.

Rehearing overruled February 22, 1950.