## Hugh Henderson v. Shell Oil Company et al

No. A-1330. Decided February 11, 1948.
Rehearing overruled March 17, 1948.
(208 S. W., 2d Series, 863.)

468

*Sanford, King, Estes & Cantwell, Joe E. Estes* and *Conan Cantwell,* all of Dallas, for petitioner.

*George W. Cunningham* and *Jesse M. Davis,* both of Tulsa, Okla., *John E. Kilgore* and *W. D. Masterson, Jr.,* both of Dallas, for Shell Oil Co.; *Stine, Bunting & Stine,* of Henrietta, for W. L. Mount, guardian succeeding M. L. Henderson, deceased; *Allen Wight* and *Lief K. Frickstad,* both of Dallas, for National Surety Co., all respondents.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

A very full statement of this case is made in the opinion of the Court of Civil Appeals, for which see 202 S. W. (2d) 492. We have concluded that each question of law presented to that court was correctly decided by it, but in the light of the contention presented here in the application, which reflects much diligence and earnestness, we have concluded to write on what we conceive to be the principal questions before us. Our statement, in the main, will be in the language of the opinion of the Court of Civil Appeals, but in a somewhat condensed form.

At all times mentioned in this opinion Hugh Henderson has been a person of unsound mind and has resided in the State of Missouri. Some time prior to 1918 he acquired a 220-acre tract of land in Clay County, Texas. In the year last mentioned the County Court of Clay County appointed his brother, M. L. Henderson, a resident of that county, as guardian of his estate. In 1939 Shell Oil Company proposed to the guardian to purchase an oil and gas lease on his ward's land. Shell's attorneys recommended that a new order of appointment be obtained, the validity of the former order being questioned on the ground that it did not contain an express adudication that Hugh Henderson was of unsound mind. The recommendation was adopted, and M. L. Henderson again made application for appointment as guardian of that estate, and his application was granted. Notice of the application was given by posting. In addition, some sort of non-resident notice was served on Hugh Henderson in Missouri. Shortly after the 1939 appointment, the guardian, under order of the court, executed an oil and gas lease on Hugh Henderson's land in favor of Shell, and later executed a conveyance of one-half of the minerals in said land to the same company. Thereafter Shell drilled wells on the land, and has produced a large amount of oil therefrom. In 1943 Hugh Henderson, by next friend, filed an application for writ of certiorari in the District Court of Clay County, seeking a revision of the orders of 1918 and 1939 appointing M. L. Henderson guardian of his estate, and an annulment of the orders authorizing the oil and gas lease and the mineral deed. The case reached this Court on a contest over the question of who should act as next friend (143 Texas 142, 182 S. W. (2d) 994), but no question was decided on that appeal which has any relevancy to the questions now before the Court. In a non-jury trial of the certiorari proceeding in the district court, judgment was rendered affirming the orders of the probate court and denying Henderson any relief. That judgment was affirmed by the Court of Civil Appeals. 202 S. W. (2d) 492.

We granted the application for writ of error for the purpose, primarily, of reviewing the holding of the Court of Civil Appeals with respect to the question of whether the orders of the county court authorizing the execution of the lease and the mineral deed were invalid because of the conflict of loyalties on the part of the attorney representing the guardian in those proceedings. Before discussing that question, we shall write briefly on the question of the jurisdiction of the probate court to enter the order of 1939 appointing M. L. Henderson guardian of the estate of Hugh Henderson. We find it unnecessary to

consider whether or not the order of 1918 was valid, since the lease and deed under attack were executed after the order of 1939 was entered.

■ Article 4132, R. C. S., authorizes probate courts to appoint guardians for nonresident persons of unsound mind, and Article 4123, R. C. S., authorizes those courts to determine that the person for whom a guardian is to be appointed is of unsound mind. A State has the power to control the property of nonresident minors and persons of unsound mind situated within its borders, through guardians appointed for their estates. Hoyt v. Sprague, 103 U. S. 613, 26 L. Ed. 585; Neal v. Bartleson, 65 Texas 478. The validity of an order appointing a guardian of the estate of a person of unsound mind does not depend upon a prior legal adudication of insanity. The fact of insanity may be established upon the hearing of the application for the appointment of the guardian. Bearden v. The Texas Company (Com. App.), 60 S. W. (2d) 1031. Nor is it necessary that a prior adjudication of insanity in the state of the residence of the person of unsound mind be shown. Chaloner v. Sherman, 242 U. S. 455, 37 Sup. Ct. 136, 61 L. Ed. 427.

■ ■ Article 4116, R. C. S., provides that a minor fourteen years of age or over shall be personally served with citation to appear and answer an application for the appointment of a guardian of him or of his estate. Article 4274 provides that each provision in the title relating to guardianships of persons and estates of minors shall apply to guardianships of persons of unsound mind "in so far as the same are applicable." Petitioner takes the position that the Article last cited makes the Article first cited applicable to guardianship proceedings for insane persons. We are not in agreement with this view. Article 4116 is grounded upon the presumption that by the time the minor reaches the age of fourteen years he will have acquired some discretion and be capable of making a choice of guardian. No such presumption obtains in the case of a person of unsound mind. His discretion does not grow with the years. Article 4116 is, therefore, not applicable to him.

■ It was held in Storey v. Storey (Civ. App.) 105 S. W. (2d) 370 (writ of error refused) that personal service of citation on a person of unsound mind was ineffective to confer jurisdiction on a county court to appoint a guardian for such a person and that notice by posting provided by Articles 4114 and 4115 was mandatory. That requirement was met in this case. Prior to 1941 (47th Leg., p. 867, ch. 541) there was no statute

in Texas authorizing nonresident notice in a guardianship proceeding for a person of unsound mind. One conclusion is that the Court of Civil Appeals correctly decided that the County Court of Clay County was acting within its jurisdiction in making the appointment of M. L. Henderson as guardian of the estate of Hugh Henderson in 1939.

█ It is our further view that due process within the meaning of the 14th Amendment to the Constitution of the United States was observed in the proceeding. Jones v. Prairie Oil Co., 273 U. S. 195, 71 L. Ed. 602, 47 Sup. St. 338; McKinley v. Salter (Civ. App.), 136 S. W. (2d) 615 (writ dismissed, correct judgment). Such a proceeding is one in rem or quasi in rem. McCormick v. Blaine, 245 Ill. 461, 178 N. E. 195, 77 A. L. R. 1215; In Re Sall, 59 Wash, 539, 110 Pac. 32, 626, 140 Am. St. Rep. 885; Wallace v. Tinney, 145 Iowa 478, 122 N. W. 936, 139 Am. St. Rep. 448. In a proceeding of that nature the court may acquire jurisdiction by means of substituted or constructive service. Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565; Re Sall, supra; Case note 77 A. L. R. 1227. A contrary holding would have the effect of depriving the courts of this State of control over lands situated within its borders.

█ We come now to consider the question upon which the application for writ of error was granted. Petitioner challenges the validity of the order authorizing the execution of the oil and gas lease to Shell and insists that it should be set aside and the lease annulled on the ground that such guardianship proceedings, though purporting to be in behalf and for the benefit of Hugh Henderson, were actually conducted in behalf of Shell. The primary basis for this contention is that the attorney who represented the guardian, and therefore the interest of Hugh Henderson, in those proceedings was at that time a broker employed by Shell on a contingent basis to procure for it an oil and gas lease on Hugh Henderson's land, and he was actually paid a commission by Shell for procuring such lease at the conclusion of the proceedings. The district court, after a full hearing, refused to vacate the order and annul the lease, and its judgment was affirmed by the Court of Civil Appeals. We should therefore view the evidence in the light most favorable to the respondent. Our statement of the facts bearing upon this question will be substantially in the language of the opinion of the Court of Civil Appeals.

In 1939 Shell carried on some explorations in the area in which Hugh Henderson's land is located. What information was

derived from such explorations is not shown in the record, but as a result thereof representatives of Shell engaged Mr. Frank Bunting, an attorney who resides in Clay County and who was related by marriage to the Henderson family, to assist its leasing agent in obtaining leases on a block of land in that vicinity. It was agreed that for his services Mr. Bunting was to be paid a brokerage fee of 50¢ per acre on all leases which might be obtained in that block. Thereafter, Mr. Bunting informed the guardian, M. L. Henderson, and other members of the Henderson family of the offer made by Shell to him. With knowledge of that fact, leases on lands belonging to other members of the Henderson family were obtained and the guardian agreed to lease the ward's land to Shell on the same terms, subject to the approval of the county court. With full knowledge conveyed to the guardian by Mr. Bunting of the facts with respect to the brokerage fee which he expected to receive from Shell, the guardian suggested to Mr. Bunting that he act as attorney for him, the guardian, in conducting the proceedings in the probate court. Mr. Bunting again pointed out to the guardian that he expected to receive a brokerage fee from Shell, but the guardian, nevertheless, requested Mr. Bunting to act as his attorney in the matter. A part of the general arrangement was that Shell would pay the costs of the probate proceedings, including the attorney's fee. There was nothing concealed about the transaction; in fact, it was voluntarily entered into with full knowledge of all the facts. Pursuant to the agreement, Mr. Bunting conducted the proceedings and was paid an attorney's fee for such services by Shell, as well as the brokerage fee which had theretofore been agreed upon. The proceedings were not, strictly speaking, adversary. The guardian received the same bonus per acre for the lease as other landowners in the vicinity. There is no showing of fraud or damage. Notwithstanding this, we are asked to declare the proceedings and the sale of the lease thereunder invalid on the ground that the attorney was subject to divided loyalties. It is a sound public policy which exacts utmost fidelity of attorneys, and that policy should not be weakened by the whittling down process or the adding of numerous exceptions to the rules calling for its application. On the other hand, loyalty to that policy does not require the setting aside of court orders and the destruction of titles to valuable property when, as in this case, the transactions are open and aboveboard.

Petitioner places much emphasis on the fact that it appears that the county court was not informed of the fact that Mr. Bunting was being paid by Shell, but the district court before

which the case was tried de novo had full knowledge of all the facts, and after a full hearing upheld the validity of the entire transaction. The Court of Civil Appeals, in a well-considered opinion, has found no grounds upon which to invalidate these proceedings, and we have concluded that a sound public policy does not require this court to do so.

We are unable to sustain any of the assignments brought forward in the application for writ of ereror, and it is accordingly ordered that the judgment of the Court of Civil Appeals affirming that of the trial court, be affirmed.

Opinion delivered February 11, 1948.

Rehearing overruled March 17, 1948.