Lamar PALMER, Appellant,

v.

D. O. K. K. BENEVOLENT AND INSURANCE ASSOCIATION, Appellee.

No. 13434.

Court of Civil Appeals of Texas.

Houston.

Oct. 29, 1959.

Rehearing Denied Dec. 3, 1959.

Lamar Palmer, Houston, for appellant.

Smith & Lehmann, J. Edwin Smith, Houston, for appellee.

WERLEIN, Justice.

This is an appeal from a judgment on bill of review setting aside a default judgment taken by appellant on September 9, 1958, on the ground of extrinsic fraud allegedly perpetrated by appellant. The trial was to the Court without a jury. With consent of counsel, the Court under Rule 174(b), Texas Rules of Civil Procedure, limited the trial to a determination of whether the default judgment should be set aside, and reserved for later determination in a separate trial the amount, if any, owing appellant by appellee.

We have carefully considered appellant's Points complaining of the Trial Court's error in setting aside the default judgment in question. We think the Court's judgment is amply supported by the evidence adduced at the trial. At the time of taking the default judgment appellant was the attorney for appellee under a written power of attorney, obligating appellant to defend appellee in all actions, suits or legal proceedings pending or later instituted against it. While this contract of employment was in full force and effect, appellant, acting as his own attorney, filed suit against appellee on a purported sworn account, seeking judgment for approximately $63,000 attorney's fees alleged to be due him for legal services rendered "in and about the prosecuting and defending of suits in courts in the State of Texas, in Federal courts and tax courts, all as specified in the account annexed, marked Exhibit A." Exhibit A merely states, "Money saved D.O.K.K. Benevolent Association on taxes —$126,000.00, Interest for three years at 6% per annum—$11,340.00, total $137,-340.00. Payment made on interest—$200.00. Balance—$137,140.00."

Exhibit D attached to such petition consists of the power of attorney given by appellee to appellant in which it is provided that appellant was to receive one-half of whatever sum or sums that might be realized, saved or collected from any individual, partnership, business, corporation, local state or Federal government, or taxing agency, after costs of court had been deducted from the total, whether through compromise or by judgment of the courts, boards or otherwise.

There was evidence to the effect that citation in such case was served on appellee's secretary-treasurer, Edward Peterson, in appellant's office, and that appellant had called Peterson to come to his (Palmer's) office where he was served as soon as he arrived; that Peterson read the citation and asked appellant what to do about it, and was instructed by appellant, "Let it lie low"; that Peterson showed the citation to Glenn McGowan, appellee's president. Peterson testified that he did not think McGowan understood the citation; that he never did bring the citation to the attention of the board, and did not mention it to anybody else, and that he put the citation in his desk for the purpose of letting it "lie low" because appellant had instructed him to do so.

Peterson further testified that appellant called him to the courthouse and briefed him on the different questions he was supposed to answer. To questions asked by the Court, Peterson testified that maybe he did tell the court that each of the directors had been advised that the suit had been filed, and also that he told the court at the time the default judgment was taken that appellant "had done all these services and had saved the Lodge some $100,000.00

and that he was entitled to one-half of it for his services."

In the trial of the instant case, Peterson testified that he did not know whether the things he told on the default judgment hearing were the truth or not; that there were a lot of things took place he did not know anything about; that he did not know about how much money had been saved the Association.

In his affidavit, which was introduced in evidence without objection, Peterson stated, among other things, that appellant had told him to say that the Association owed the money and that the members knew about the suit; that actually and truthfully they did not owe the money and the members did not know about it; that he did this because he had come under the influence of appellant; that appellant was supposed to be the lawyer of the Association and he felt he was supposed to do what appellant told him to do; that appellant "never sent a bill for the money he claimed in the suit and never made a demand on me for this amount before the suit was filed."

There was evidence showing that the various officers and members of the operating board of appellee, other than Peterson and McGowan, didn't know anything about the suit and didn't know that a default judgment had been taken against appellee until appellant attempted to execute against appellee's real estate and other properties. After such attempt, appellee revoked appellant's power of attorney by letter dated October 16, 1958. There was also evidence that appellee owed appellant much less than the amount claimed by him, and that the sum of $63,000 was not owed appellant.

At the request of appellant, the Court filed its Findings of Fact and Conclusions of Law at considerable length. The Court found that appellant's general power of attorney was in full force and effect at the time that his suit was filed and the default judgment was taken, and at such time a fiduciary relationship existed between him and appellee; that the bringing of said suit placed appellant in adverse relations with appellee, his client; that appellant did not, prior to the filing of said suit or the taking of said default judgment, fully disclose to his client material facts as to the adverse nature of the relationship which had developed and that such failure constituted extrinsic fraud, preventing appellee from defending said cause in which the default judgment had been taken; that appellant pursued a course of action and conduct by which he intended to and did conceal from the members and proper officers of appellee the pendency of Cause No. 511,480 in which the default judgment was taken, until after such default judgment had become final; that appellant conspired with Peterson to prevent the other officers and members of the Association from knowing the pendency of said cause until after such default judgment had been entered and had become final, and that such conduct constituted extrinsic fraud, preventing appellee from defending said cause; that Peterson failed to properly notify the proper officers of the Association of his having been served with citation in said cause, because of instructions received by him from appellant and because of undue influence exerted upon him by appellant, and that such instructions and undue influence constituted extrinsic fraud; that Peterson gave false testimony in that he swore that the proper officers and members of appellee Association knew of the pendency of the suit, and he was induced to give such false testimony by appellant, and such conduct constituted extrinsic fraud; that appellant produced Peterson in court before the Court at the time the default judgment was entered, and that Peterson gave false testimony, and that he swore that appellant had defeated Federal tax claims against appellee in the amount of $125,600; that Peterson was induced to give such false testimony by appellant, and that such conduct constituted intrinsic fraud resulting in the entry of said default judgment. The Court further found that the account sued on in

said Cause No. 511,480 was not an account on which a systematic record had been kept, and that according to the evidence in the present case, after severance of the issues under Rule 174(b), T.R.C.P., appellant under his power of attorney had earned only $2,374.37 and had been paid $1,990, and that the balance owing him at the time the default judgment was taken was only $384.37.

The Trial Court concluded that the fiduciary relationship between appellant and appellee created an obligation on appellant's part to fully disclose to his client the adverse interest that had developed between them, and that his failure to do so prevented appellee from defending said cause in which default judgment was taken and constituted extrinsic fraud; that the acts, omissions and conduct on the part of appellant by which he concealed from the proper officers of appellee the pendency of said Cause No. 511,480 constituted extrinsic fraud, preventing appellee from defending said cause; that appellee had a meritorious defense and no adequate remedy at law, and that said default judgment should in all things be set aside, and appellant perpetually enjoined from enforcing, executing upon or in any way collecting upon said default judgment.

■ It is apparent from the record and the Trial Court's Findings of Fact that there is evidence showing the default judgment was taken as the result of both intrinsic and extrinsic fraud. The acts and conduct constituting intrinsic fraud, such as the false testimony of Peterson, would not alone have warranted the setting aside of the default judgment in question. There is ample evidence, however, of extrinsic fraud on the part of appellant which prevented appellee from appearing in court and defending the suit, and which did warrant the setting aside of said judgment. Alexander v. Hagedorn, 148 Tex. 565, 226 S.W.2d 996.

Without approving the Trial Court's Finding of Fact No. VIII in view of the fact that determination of the exact amount owing appellant was reserved for a separate trial, we are of the opinion that the other Findings of Fact, subject to the statement in the next preceding paragraph, and also the Court's Conclusions of Law are amply supported by the evidence.

■ The fiduciary relationship between appellant and his client placed appellant under an obligation to fully disclose his adverse interest and prevented him from taking a default judgment under the circumstances of this case. Slay v. Mary Couts Burnett Trust, Tex.Civ.App., 180 S.W.2d 480, in part affirmed and in part reversed, 143 Tex. 621, 187 S.W.2d 377; Jinks v. Whitaker, Tex.Civ.App., 195 S.W. 2d 814, writ ref.; Henderson v. Shell Oil Co., 1948, 146 Tex. 467, 208 S.W.2d 863; 7 Tex.Jur.2d, pp. 67–69, Attorneys at Law, § 28; Fiske v. Buder, 8 Cir., 1942, 125 F.2d 841, at pages 848–849.

It was found by the Trial Court that the fraud complained of as a ground for relief, prevented appellee from fully presenting its case and constituted extrinsic fraud. According to the testimony of Peterson, appellant actively schemed and connived to prevent appellee from knowing about the suit until after the judgment had become final, thus preventing it from asserting valid defenses. Holmes v. Jackson, Tex.Civ.App., 200 S.W.2d 276; Hammond v. Hammond, Tex.Civ.App., 210 S.W.2d 829, writ dism.; 25 Tex.Jur., p. 610 et seq., Judgments, § 203, and cases noted.

■ In other Points appellant complains that the Court erred in several particulars in connection with granting a temporary restraining order or injunction in said Cause No. 511,480. Since the Trial Court has set aside said judgment after a trial on the merits, any error in connection with such injunction would be immaterial and harmless. We find no merit in appellant's contention that the Court erred in granting appellee a short postponement because of illness of appellee's counsel. Certainly no error has been shown and if such

there was, it was harmless. Rule 434, T.R.C.P.

In other Points appellant has complained that there was material error in the Trial Court's rulings on the evidence. Appellant has failed to show that in any such alleged erroneous rulings he was harmed. Moreover, there are no bills of exceptions as to items he contends were erroneously excluded. Appellant has not shown that any improper judgment resulted from rulings on the evidence, nor has he shown any ground for reversal.

All of appellant's Points of Error are overruled and the judgment of the Trial Court is affirmed.