NORTHSIDE INDEPENDENT SCHOOL DISTRICT OF BEXAR, ET AL., COUNTIES, TEXAS, et al.

v.

TEXAS EDUCATION AGENCY and Marlin L. Brockette, Commissioner of Education of the State of Texas.

Civ. A. No. SA75CA235.

United States District Court,
W. D. Texas,
San Antonio Division.

Dec. 16, 1975.

Clemens, Weiss, Spencer & Welmaker, George H. Spencer, Dobbins, Howard & Harris, William P. Dobbins, San Antonio, Tex., for plaintiffs.

John L. Hill, Atty. Gen., & Roland Allen, Asst. Atty. Gen., Austin, Tex., for defendants.

Mexican-American Legal Defense & Ed. Fund, George J. Korbel, San Antonio, Tex., for amici curiae.

### ORDER FOR ADDITIONAL DISCOVERY

SPEARS, Chief Judge.

 After having considered the complete record herein, as well as the briefs filed by plaintiffs, defendants, and amici curiae, it is obvious that there is a wide divergence as to the theory upon which this case should be tried and determined. Plaintiffs, on the one hand, assert that the controlling issue is whether racial imbalance in several of the Northside schools is the result of segregatory intent on the part of local schools officials, a concept with which this Court has already indicated agreement,[1] while the defendants, on the other hand, have consistently contended that segregatory intent is not a necessary prerequisite to a finding that the school district is in violation of the Tyler

---

1. E. g., transcript, pages 30, 36, 247, and the order granting temporary injunction dated November 5, 1975, in which this Court found that "there is no evidence of segregatory intent on the part of the plaintiff school district or the members of its Board of Trustees or its administrative staff which has caused or contributed to the racial imbalance of the schools in question".

court order.[2] The only real challenge to plaintiffs' position has come from amici curiae, who strongly criticize defendant's failure to defend the question of intent, saying that, as a consequence thereof, the Court has been deprived of material evidence necessary to make an informed judgment. Among other things, they request that a discovery schedule be set in order to allow them an opportunity to obtain the additional evidence.

 Since this case involves a matter of important public interest, which amici curiae have expressed a willingness to pursue, this Court is of the opinion that the case should be reopened for the limited purpose of allowing further dis-

---

2. The order of the Tyler Court, dated April 20, 1971, required the defendants to "review each year all school districts in the state in which there exists schools enrolling more than 66% minority group students . . . and . . . *make findings as to whether or not the student assignment plans of those districts have resulted in compliance with constitutional standards.*" While this language was altered to some extent in an amended order, dated August 9, 1973, it could not reasonably have been intended to provide that a mere statistical analysis of racial identification was sufficient to constitute a violation of constitutional rights, because if it had done so, it would have run afoul of the Supreme Court pronouncement in *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1 at page 24, 91 S.Ct. 1267 at page 1280, 28 L.Ed.2d 554 at page 571 (1971), where it was said: "If we were to read the holding of the District Court to require, as a matter of substantive constitutional right, any particular degree of racial balance or mixing, that approach would be disapproved and we would be obliged to reverse."

That segregatory intent is an essential element to a finding of unconstitutional segregation was made explicit by the Supreme Court in *Keyes v. School District,* 413 U.S. 189 at 208, 93 S.Ct. 2686 at page 2697, 37 L.Ed.2d 548 at page 563 (1973), in the following language: "We emphasize that the differentiating factor between *de jure* segregation and so-called *de facto* segregation to which we referred in *Swann* is *purpose* or *intent* to segregate."
The Fifth Circuit has itself acknowledged the fact that *Keyes* reversed its prior holding to the effect that cause and effect constituted a sufficient basis for desegregation of a de facto school system, and agrees that proof of segregatory intent now is an essential element in a finding of alleged segregation. *Morales v. Shannon*, 516 F.2d 411 at 412–413 (1975), and *United States v. Midland I.S.D.*, 519 F.2d 60 at 63–64 (1975).
When the April 20, 1971 Tyler order was appealed, the Court of Appeals was careful to insert therein the following language: "Nothing herein shall be deemed to affect the jurisdiction of any other district court with respect to any presently pending or future school desegregation suits."

So it cannot be said that the exclusive jurisdiction to hear and determine these cases vests in the Tyler Court. Nevertheless, this Court is in complete accord with *Gregory-Portland I.S.D. v. Texas Education Agency*, CA No. 73–C–175 (S.D.Tex. March 1, 1975), in which Judge Cox made it crystal clear that "[T]his court does not purport to contravene the Tyler order, but says that the Texas Education Agency has no right, under the Tyler order or any other order, to impose the sanctions it proposes without finding the existence of unconstitutional segregation . . . ."

Upon a petition for Writ of Mandamus to compel Judge Cox to transfer the case to the Tyler Court, the Fifth Circuit held such relief to be inappropriate, noting that "[T]he Southern District Court has expressly disavowed any intent to contravene the mandate . . . [and] the two cases need not inevitably be in conflict." *U. S. v. U. S. Dist. Ct.*, 506 F.2d 383 at 384 (1974).

Judge Justice, the author of the Tyler order, has himself recognized the jurisdiction of other Texas federal courts in suits of this kind when he said, in a case where a state court attempted to prohibit the Commissioner of Education from rejecting certain transfer requests, that whether the Commissioner properly carried out the applicable section of his order "may properly be aired in a federal district court if and when such challenge is asserted." *United States v. Texas*, 356 F.Supp. 469, 472 (E.D.Tex.1972).

In light of the foregoing, it is difficult for this Court to understand why the Texas Education Agency persists in refusing to perform the obligation placed upon it by the Tyler Court, to make findings with respect to whether or not the student assignment plans of districts enrolling more than 66% minority group students, have resulted in compliance with federal constitutional standards, before it undertakes to impose sanctions, as it has done in the instant case. To ignore decisions of the Supreme Court and the Court of Appeals, while, at the same time, falling back on language of the Tyler Court order taken out of context, hardly constitutes a valid excuse for the failure of a responsible agency to act responsibly.

covery by amici curiae and/or the parties hereto with respect to the ultimate issue of segregatory intent.[3] It is, accordingly, ORDERED:

(1) That discovery herein allowed shall be completed within sixty (60) days from January 1, 1976, and amici curiae, although not parties to this lawsuit, nor made such by this order, nevertheless, shall have full authority during said period only, to conduct discovery procedures as either of the parties is permitted to do under the Federal Rules of Civil Procedure, including, but not limited to, the calling of witnesses, whether they have previously testified or not, for questioning by oral deposition or written interrogatories.

(2) Not later than December 31, 1975, counsel for amici curiae shall inform counsel for the plaintiffs and defendants, as well as the Court, in writing, concerning the areas of discovery they expect to pursue, and shall identify, to the fullest extent possible, the witnesses they expect to depose and any further evidence they propose to develop, after which all counsel shall promptly meet at a time and place designated by plaintiffs' counsel, to prepare a discovery schedule. Not later than February 1, 1976, all counsel shall again meet, at a time and place designated by plaintiffs' counsel, if either counsel desires to add to or otherwise amend the discovery schedule.

(3) Within fifteen (15) days after discovery has been completed and all transcripts of depositions have been made available to amici curiae and the parties, amici curiae shall submit to the Court and counsel for the plaintiffs and the defendants, a brief summarizing any evidence obtained during the discovery period, and state their position with respect to the effect that such evidence, if any, together with evidence already before the Court, has upon the resolution of the question as to whether or not the plaintiffs are entitled to declaratory relief and a permanent injunction.

(4) Not later than fifteen (15) days after the submission of the brief of amici curiae, counsel for the plaintiffs and the defendants may respond thereto.

(5) After any additional evidence is adduced, and the post discovery briefs have been considered, the Court will make a determination as to whether or not a further hearing on the merits shall be held.

(6) The temporary injunction heretofore entered in this cause shall remain in full force and effect pending a ruling on plaintiffs' request for declaratory judgment and permanent injunction.

(7) Plaintiffs' motion for an order determining that this cause may be prosecuted as a class action is held in abeyance pending final judgment herein.

(8) All relief requested which is not granted in whole or in part by this order is hereby DENIED.

---

**3.** As was pointed out by the Fifth Circuit in *Morales,* a good deal of Justice Powell's special opinion in *Keyes* is addressed to this question. In footnote 15 he said:

"The Court has come a long way since *Brown I.* Starting from the unassailable *de jure* ground of the discriminatory constitutional and statutory provisions of some States, the new formulation—still professing fidelity to the *de jure* doctrine—is that desegregation will be ordered despite the absence of any segregatory laws if: (i) segregated schools in fact exist; (ii) a court finds that they result from some action taken with segregative intent by the school board; (iii) such action relates to any 'meaningful segment' of the school system; and (iv) the school board cannot prove that its intentions with respect to the remainder of the system were nonsegregative."
413 U.S. at 230, 93 S.Ct. at 2708, 37 L.Ed.2d at 575–76, n.15.