Janet ALLISON, Relator,

v.

**The Honorable Al WALVOORD, Judge of the County Court at Law, Midland County, Respondent.**

No. 08–91–00339–CV.

Court of Appeals of Texas,
El Paso.

Nov. 6, 1991.

 

Thomas S. Morgan, Midland, A.B. Conant, Jr., Conant Whittenburg, Whittenburg & Schachler, Dallas, for relator.

R. Jack Ayres, Law Offices of R. Jack Ayres, Dallas, Al Walvoord, Judge, County Court at Law, Midland, Stephen M. Marceau, Cox & Smith Inc., San Antonio, Robert Summers, Scott, Douglass & Luton, Austin, for respondent.

Before OSBORN, C.J., and WOODARD and KOEHLER, JJ.

## OPINION

OSBORN, Chief Justice.

In this original proceeding, the Relator seeks a Writ of Mandamus in order to have certain orders vacated in a case in which the Relator seeks to be appointed as a limited guardian for her husband. The Writ will be granted conditionally.

Fred Allison has been sued in two different cases in Midland County in which the parties seek to recover substantial sums of money. In one of the cases, a deposition was taken and it is claimed that additional discovery would justify the taking of a second deposition. In the other case, Mr. Allison was deposed and he then made over 860 changes to his answers. It is contended that the many changes justify an additional deposition in that case. One of the cases is set for trial in 1992.

Prior to additional discovery, Mrs. Allison filed, in the county court, an application for appointment of limited guardian and seeks to be appointed as the limited guardian for her husband who she alleges lacks the capacity to care for himself or his property with regard to the pending litigation. After the application was filed, the plaintiffs in the two pending suits each filed an objection to the application. In addition, they sought to have the court order a medical and psychological examination of Mr. Allison by a doctor of their choice. Mrs. Allison filed a motion to strike and alleged, among other issues, that the contestants have no standing to contest her application.

Following a hearing, the court entered an order finding that the contestants did have standing to appear, and the motion to strike was denied. The order directed Janet Allison to respond to interrogatories and request for production. Fred Allison was ordered to appear for examination and testing by Dr. James P. Grigson. The court granted a request for a jury trial and set the case for hearing. Mrs. Allison then filed her Petition for Writ of Mandamus with this Court.

The basic issue which we must decide is whether the contestants have standing to contest her right to be appointed limited guardian of her husband in order to defend the claims against him. This appears to be a case of first impression. The Probate Code was amended in 1983 to provide for limited guardianship proceedings. Tex. Prob.Code Ann. § 130A (Vernon Supp. 1991). Prior to that amendment, the act was limited in application to mentally retarded persons. Tex.Prob.Code Ann. § 130A (Vernon 1980). The amendment expanded the statute to include "incapacitated persons" and provided that such guardianships "shall be utilized only as necessary to promote and protect the well-being of the individual...." Section 130A(a). That same section also provides that the appointment shall be made pursuant to the provisions to "Part 5, Chapter V." Section 130A(b) states that "incapacitated person" means an adult who, because of a physical or mental condition, is substantially unable among other things "to manage his property or financial affairs."

Section 130E(a) provides for notice to "all persons interested in the welfare" of the person for whom a guardian is sought. Section 130G provides that the person for whom a guardianship is sought is entitled to a jury trial. There must be clear and convincing evidence in order for the court to grant the application. Id. If the application is granted, the order shall specify "the claims against the person which the

limited guardian may pay, compromise, or defend, if necessary...." Section 130H(d)(4).

■ First, the Relator argues that guardianship proceedings are not intended to be adversary in character. She relies upon the holdings in *McKinley v. Salter*, 136 S.W.2d 615 (Tex.Civ.App.—El Paso 1939, writ dism'd, judgm't cor.), *appeal dism'd*, 312 U.S. 659, 61 S.Ct. 734, 85 L.Ed. 1106 (1941); and *Henderson v. Shell Oil Co.*, 202 S.W.2d 492 (Tex.Civ.App.—Fort Worth 1947), *aff'd*, 146 Tex. 467, 208 S.W.2d 863 *cert. denied*, 335 U.S. 884, 69 S.Ct. 233, 93 L.Ed. 423 (1948). Perhaps there is an exception where the ward opposes a guardianship. That exception does not exist in this case. Section 130E(b) provides for personal service of citation upon the parents or conservator or other person having control of the incapacitated person. All persons closely related shall be given notice. Clearly, those parties could contest who would be appointed guardian and whether a guardianship was necessary since it would be expected that they would be interested in the welfare of the person alleged to be incapacitated. These contestants do not fall within those named in the statute who are to receive notice. We conclude, and they admit, that they do not fall into that category of "all persons interested in the welfare" of such person. Basically, their interest is in obtaining a substantial judgment against Mr. Allison which could only adversely affect his welfare. We conclude the proceedings can be adversarial. *Ulrickson v. Hawkins*, 696 S.W.2d 704 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.). But, the issue remains as to who has standing to present a contest.

The contestants rely upon Sections 10 and 108 of the Texas Probate Code to establish their right to objection to the application filed by Mrs. Allison. Section 108 is entitled "Laws Applicable to Guardianships" and it states:

> The provisions, rules, and regulations which govern estates of decedents shall apply to and govern guardianships, whenever the same are applicable and are not inconsistent with any provision of this Code.

The contestants urge that the language in Section 108 requires the court to give application to Section 10 which permits "[a]ny person interested in an estate" to file opposition thereto in writing and gives the right to be heard upon such opposition. They also note that Section 3(r) of the Probate Code says:

> 'Interested persons' or 'persons interested' means heirs, devisees, spouses, creditors, or any others having a property right in, or claim against, the estate being administered; and anyone interested in the welfare of a minor or incompetent ward.

■ Contending that they have a claim against Fred Allison, the contestants argue that they are persons interested in his estate and as such have standing to contest any court proceedings which might have an adverse effect upon their claim. In *Logan v. Thomason*, 146 Tex. 37, 202 S.W.2d 212 (1947), the Court concluded that the interest referred to must be a pecuniary interest, real or prospective, absolute or contingent. The contestants assert that the appointment of a limited guardian could adversely affect their right to additional discovery. It is also contended that a jury is less likely to award exemplary damages as punishment against a person whom a court has found to be incapacitated. While it may be difficult to disagree with the second contention, that should not be a basis for denying the application. We do disagree with the first contention. The trial judge in the two district court cases will still maintain full control over all additional discovery, including the full range of sanctions for a violation of any discovery order. If Mrs. Allison is granted the right to act as limited guardian, and at this stage of the proceedings that issue is still undecided, she could be granted authority to pay, compromise or defend all claims.

But, the fact that she acts in the place of her husband in defending the pending claims does not provide her or her husband with any rights that Mr. Allison does not now have to defend himself. Neither

would such appointment in any way limit the right of the district court judge to manage and control the trial of the pending cases. Certainly, request for admissions, interrogatories and discovery orders would then be directed to Mrs. Allison as limited guardian, rather than to Mr. Allison, but the requirements for full compliance with all requests would not be any less than before such an appointment as a limited guardian. It is possible now that he would not comply with each request. It is possible that as limited guardian, she might not comply with each request. At that time, it becomes the responsibility of the trial judge to take such action as is appropriate. The fact that his order would be directed to Mrs. Allison as limited guardian, rather than Mr. Allison, should not affect its impact upon the pending litigation.

 It appears to have been the intention of the legislature that the "Limited Guardianship Proceedings" be of a confined nature. Section 130A(a) provides for appointment pursuant to "Part 5, Chapter V" indicating only the provisions of this part of the Code are to control. The act is to "protect the well-being of the individual" and those with an adverse interest can hardly qualify as being persons interested in protecting his well-being. Notice is to be given only to relatives and those interested in the welfare of the incapacitated person. These contestants were not entitled to notice and we conclude had no right or standing to contest the application.

The Petition for Writ of Mandamus is granted. The county court is directed to grant the motion to strike, to vacate the order directing examination by Dr. Grigson, to vacate the order for a jury trial as requested by these contestants and to proceed to hear and act on the application for limited guardianship, and the Writ will issue only upon the trial court's failure to comply.

WOODARD, Justice, concurring.

I concur with the majority but, at the same time, I recognize the discomfort and dilemma of the trial judge. Although the proceedings are statutorily not adversarial in nature and require a clear and convincing evidence burden of proof, there are mandates which direct a judge to a further duty of ascertainment of the truth. Section 130A(a) directs the judge to arrive at the extent necessitated by the individual's actual mental or physical limitations in creating a limited guardianship. Section 130F(a)(6) allows the court to require other information. Section 130G(a) provides:

At the hearing, the court shall:

(1) inquire into the ability of the allegedly incapacitated person to feed, clothe, and shelter himself, to care for his own physical health, and to manage his property or financial affairs; and

(2) inquire into the qualifications, abilities, and capabilities of the person seeking to be appointed limited guardian.

Generally, "inquire into" means to seek the truth by investigation or examination. *Webster's New Twentieth Century Dictionary (Unabridged), Second Edition* 947 (1964).

This is a common burden for a magistrate under Roman based law, but it is uncommon to our English–American adversary system of justice. There is always the hazard of assuming an adversary role in examining witnesses—in fact, or in appearance of fact. For some judges trained in the adversary system of judging, it is difficult to simultaneously prosecute a case and assess the credibility of witnesses.

If then the case does not warrant adversarial consideration, it certainly qualifies for the appointment of an amicus curiae by the trial court. A true amicus curiae is without interest in the ligation in which he appears. He is a "bystander" whose mission is to aid the court to act only for the personal benefit of the court. *Kline v. Weaver,* 348 S.W.2d 379 (Tex.Civ.App.—San Antonio 1961, no writ). An amicus curiae may conduct discovery procedures, call and question witnesses. *Northside Independent School District of Bexar, et al., Counties, Texas v. Texas Education Agency,* 410 F.Supp. 360 (W.D.Tex.1975).