ACCEPTED
04-14-00362-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
1/20/2015 3:12:01 PM
KEITH HOTTLE
CLERK

NO. 04-14-00362-CV

IN THE COURT OF APPEALS
FOURTH COURT OF APPEALS DISTRICT
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
01/20/2015 3:12:01 PM
KEITH E. HOTTLE
Clerk

IN RE GUARDIANSHIP OF TERRY L. GILMER, AN INCAPACITATED PERSON

ON APPEAL FROM THE COUNTY COURT AT LAW, KENDALL COUNTY, TEXAS
HONORABLE BILL PALMER PRESIDING
CAUSE NO. 13-070-PR

## APPELLANTS' REPLY BRIEF

HEINRICHS AND DEGENNARO, P.C.
J. Barrett Shipp
State Bar No. 24060601
100 N.E. Loop 410, Suite 1075
San Antonio, Texas  78216
(210) 366-0900 – Telephone
(210) 366-0981 – Fax
BarrettS@heinrichslaw.com

HOUSTON DUNN, PLLC
Samuel V. Houston, III
State Bar No. 24041135
4040 Broadway, Suite 440
San Antonio, Texas  78209
(210) 775-0882 – Telephone
(210) 826-0075 – Fax
sam@hdappeals.com

**ATTORNEYS FOR APPELLANTS
SHARLENE GILMER ANDERSON AND DANIEL GILMER**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES .........................................................................ii

ARGUMENT.................................................................................................1

    I.     Dan and Sharlene Do Not Have Interests That Are Adverse to Their Mother. ................................................................................ 1

         A.    Emotional Frustration Is Not an "Interest" for Purposes of Section 1055.001 of the Estates Code........................... 1

         B.    The Trust Does Not Create an Adverse Interest................ 3

         C.    Dan and Sharlene Acknowledge That Their Mother Needs Care, and They Agreed That a Neutral Third Party Should Be Appointed Guardian. .............................. 4

         D.    Whatever Frustration Dan and Sharlene Might Have Expressed About Their Parents' Divorce Does Not Mean That Dan and Sharlene Have Interests Adverse to Their Mother. ................................................................ 6

         E.    The Trial Court Erred in Taking Judicial Notice of the Divorce Proceeding. ......................................................... 7

    II.    The Ad Litem Has Not Provided Any Authority from Which the Court Could Conclude That the Trial Court's Conclusions of Law Are Correct....................................................................... 9

    III.   Prayer. ........................................................................................ 10

CERTIFICATE OF COMPLIANCE................................................................11

CERTIFICATE OF SERVICE...................................................................... 12

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Allison v. Walvoord,*
819 S.W.2d 624 (Tex. App.—El Paso 1991, orig. proceeding) ................... 2

*Betts v. Brown,* No. 14-99-00619-CV, 2001 WL 40337
(Tex. App.—Houston [14th Dist.] Jan. 18, 2001, no pet.)
(not designated for publication) ......................................................... 5, 9

*In re C.L.,* 304 S.W.3d 512 (Tex. App.—Waco 2009, no pet.) .................. 8, 9

*In re Guardianship of Miller,*
299 S.W.3d 179 (Tex. App.—Dallas 2009, no pet.) (en banc).................. 6

*In re Guardianship of Olivares,* No. 07-07-0275-CV,
2008 WL 5206169 (Tex. App.—Amarillo Dec. 12, 2008, pet. denied)
(mem. op.)............................................................................................... 4

*In re Guardianship of Valdez,* No. 04-07-00712-CV,
2008 WL 2332006 (Tex. App.—San Antonio June 4, 2008, pet. denied)
(mem. op.)............................................................................................... 2

*McCurry v. Aetna Cas. & Sur. Co.,*
742 S.W.2d 863 (Tex. App.—Corpus Christi 1987, writ denied)................ 7

*Murff v. Murff,* 615 S.W.2d 696 (Tex. 1981) ............................................... 8

*USLIFE Title Ins. Co. v. Howard,*
603 S.W.2d 322 (Tex. Civ. App.—Amarillo 1980, no writ) ........................ 7

**STATUTES**

TEX. ESTATES CODE § 1101.051.......................................................................... 8

TEX. ESTATES CODE § 1104.354.......................................................................... 9

**OTHER AUTHORITIES**

Frederick R. Franke, Jr.,
*Perfect Ambiguity: The Role of the Attorney in Maryland
Guardianships,* 7 MD. J. OF CONTEMP. LEGAL ISSUES 223, 233 (1995) ........ 2

TO THE HONORABLE FOURTH COURT OF APPEALS:

Appellants Sharlene Gilmer Anderson and Daniel Gilmer respectfully present this reply brief in support of their principal brief and to respond to issues raised in the ad litem's appellee's brief. Appellants respectfully request that the Court reverse the trial court's order dismissing their application to create a guardianship over their mother.

## ARGUMENT

### I. Dan and Sharlene Do Not Have Interests That Are Adverse to Their Mother.

#### A. Emotional Frustration Is Not an "Interest" for Purposes of Section 1055.001 of the Estates Code.

A guardianship proceeding cannot be commenced by a "person who has an interest that is adverse to a proposed ward or incapacitated person." TEX. ESTATES CODE § 1055.001(b). There is no statutory definition for "adverse" or "interest." In response to Dan and Sharlene's principal brief, the ad litem focuses on the term "adverse" and posits that Dan and Sharlene lack standing because they have expressed, in phone calls and emails with family members, their frustration with their mother and her sometimes erratic and destructive behavior.

There is no authority holding that a person cannot initiate a guardianship proceeding simply because they may have been, at one time or another, frustrated or upset with the proposed ward. If this were the rule, no

person could ever initiate a guardianship proceeding for a family member.[1] Accordingly, much of the discussion in the ad litem's brief need not be considered.

In analyzing whether a person lacks standing, courts must first identify the applicant's interest and then determine if that interest is adverse to the proposed ward. For example, a person who is suing the proposed ward lacks standing to contest the appointment of a guardian. *In re Guardianship of Valdez*, No. 04-07-00712-CV, 2008 WL 2332006, at *2 (Tex. App.—San Antonio June 4, 2008, pet. denied) (mem. op.). The lawsuit creates the interest, and because the person seeks money or property from the proposed ward through the lawsuit, the interest is obviously adverse. *Id.* ("Because Jerry was suing Martha Jane, he had an interest adverse to her."). One of the few authorities cited by the ad litem is in accord. In *Allison v. Walvoord*, 819 S.W.2d 624, 626-27 (Tex. App.—El Paso 1991, orig. proceeding), the court determined that the plaintiffs suing the proposed ward lacked standing to contest the appointment of a limited guardian. According to the court, the plaintiffs' "interest is in obtaining a substantial judgment against [the proposed ward] which could only adversely affect his welfare." *Id.* at 626.

The ad litem cites to and relies upon statements demonstrating Dan and Sharlene's emotional frustration with their mother. Appellee's Br. 6-8. But

---

[1] *See* Frederick R. Franke, Jr., *Perfect Ambiguity: The Role of the Attorney in Maryland Guardianships*, 7 MD. J. OF CONTEMP. LEGAL ISSUES 223, 233 (1995).

Dan and Sharlene's frustrations are not connected to any particular "interest," such as a pending lawsuit, claim for money, or property dispute. The ad litem rests solely upon the fact that Dan and Sharlene have said things about their mother that were, in his view, not "nice." Appellee's Br. 8.

Section 1055.001 and the case law interpreting it do not deny standing to a person who has been frustrated or upset with a proposed ward. There is no authority even suggesting that being frustrated or upset with the proposed ward constitutes an adverse interest. Thus, in line with the broad language in section 1055.001, which confers standing upon "any person," Dan and Sharlene have standing to commence a guardianship proceeding over their mother.

## B.    The Trust Does Not Create an Adverse Interest.

Dan and Sharlene's principal brief analyzed the Nana Seeley Gilmer Trust's provisions. That analysis demonstrates that Dan and Sharlene could not have an adverse interest vis-à-vis the Trust because they do not have a direct interest in the Trust and neither of them has any ability to directly control the Trust. Neither Dan nor Sharlene serves as a trustee. CR 340. At most, Dan and Sharlene are contingent beneficiaries of the Trust. *See* CR 330. The possibility that they may inherit their parents' assets, which may or may not include Trust assets, is simply not enough to establish an adverse interest.

Applying the analysis in other cases reviewing motions in limine, Dan and Sharlene cannot have an adverse interest relating to the Trust because

3

they do not have a legal ability to control the Trust. For example, in *In re Guardianship of Olivares*, No. 07-07-0275-CV, 2008 WL 5206169, at \*1-2 (Tex. App.—Amarillo Dec. 12, 2008, pet. denied) (mem. op.), a son misused a power of attorney granted to him by his mother, committing multiple acts of self-dealing after becoming his mother's fiduciary. As a result, the son was barred from participating in a guardianship proceeding involving his mother. *Id.* at \*2. But in this case, Dan and Sharlene do not have any similar level of legal authority over their mother, the trustee, or the Trust corpus.

**C.      Dan and Sharlene Acknowledge That Their Mother Needs Care, and They Agreed That a Neutral Third Party Should Be Appointed Guardian.**

The record does not support the trial court's conclusion and ad litem's assertion that Dan and Sharlene had a "plan to withhold the trust distribution" from Mrs. Gilmer. The record establishes that no distributions have been made; but there is no evidence to explain the reason. It is pure speculation for the ad litem to suggest that there was a "plan," much less one that Dan and Sharlene could have legally carried out.

Reading isolated portions of a conversation between Dan and his uncle, the ad litem asserts that Dan's singular desire was to preserve the Trust assets for his children. But a thorough reading of the transcript reveals that Dan was concerned for his mother's well-being, and he did not want his mother's sister (or other members of Linda's family) to profit at his mother's expense. Dan

4

expressed his concerns about his mother and his aunt's undue influence over her at multiple times during that conversation:

- Um, my Mother needs help. My Mother does not need what's currently happening. She does not need what Linda is giving her. She needs doctors. She doesn't need someone that is . . . currently she's with Mom, I can pretty much say 100% she's looking for money, because currently Linda is broke.

- . . . . Mother needs to see doctors. She needs to get situated with her pills. My Mom had a huge Oxicoton addictions about two years ago, that we all worked toward getting her off of. My Mom has huge nutrition problems, huge nutrition problems. That's why she's basically losing her hair and why she's losing her basically muscles, her actually her bones in her jaw. She has got more problems that we have to work through, but my Mother is not willing to do it, and there's nothing, she's not going to get the help with Linda.

3 RR:Ex. M-5.

At no time did Dan assert that his mother's assets should not be used for her care.[2] In fact, Dan said the opposite. *See id.*; 2 RR 47, 71-72. Sharlene testified that Trust funds should be used to care for her mother. 2 RR 96-97. Dan and Sharlene's complaint was that they did not want Trust assets to flow to Linda or other members of the Meagher family. *See* 2 RR 71-72, 96-97. This is an important distinction not recognized by the trial court or the ad litem.

By seeking to protect their mother from undue influence by others, Dan and Sharlene certainly were not taking any action that would adversely affect their mother's welfare or well-being. *See Betts v. Brown*, No. 14-99-00619-CV,

---

[2] Sharlene also had concerns about Linda's ability to take advantage of Mrs. Gilmer. 2 RR 86-87.

2001 WL 40337, at *4 (Tex. App.—Houston [14th Dist.] Jan. 18, 2001, no pet.) (not designated for publication). The record establishes that they wanted a neutral third party to ensure that their mother's needs would be addressed. 2 RR 81, 92. Given the size of her estate and her documented health issues, neither the trial court nor the ad litem has explained—much less considered—why it would not be in Mrs. Gilmer's best interests to a have neutral third party appointed guardian.

### D. Whatever Frustration Dan and Sharlene Might Have Expressed About Their Parents' Divorce Does Not Mean That Dan and Sharlene Have Interests Adverse to Their Mother.

Dan and Sharlene have maintained that their parents' divorce proceeding has no effect upon their ability to commence a guardianship proceeding. The trial court relied heavily upon the notice of lis pendens filed by Mrs. Gilmer on Dan's home in its findings and conclusions. CR 453, 455. But the notice of lis pendens was not the product of a dispute between Mrs. Gilmer and Dan. It arose out of Mrs. Gilmer's allegation that her husband used community funds to purchase Dan's home; therefore, the dispute is between Mr. Gilmer and Mrs. Gilmer. 2 RR 49-51; CR 17-18. Further, to the extent that there was any dispute between Mrs. Gilmer and Dan, the dispute has been resolved as the notice of lis pendens had been expunged by the time the trial

court heard the motion in limine. 2 RR 49; CR 453.[3] The ad litem did not address the foregoing analysis in his brief.

The ad litem, instead, returns to subjective emotional statements in arguing that the divorce proceeding gives rise to adverse interests. The ad litem focuses on the conversation between Dan and his uncle, wherein Dan discussed the toll the divorce was taking on his father. *See* 3 RR:Ex. M-5. Dan's statements, however, merely express the fact that he and Sharlene had been offering emotional support to their father during the divorce. *See id.* The ad litem posits that an adverse interest must arise because Dan did not say that he and Sharlene were offering the same emotional support to their mother during the divorce. The ad litem, however, has cited no authority in support of this position, and Dan and Sharlene are not aware of any authority that would support it. Accordingly, there is no adverse interest arising out of the divorce proceeding.

### E. The Trial Court Erred in Taking Judicial Notice of the Divorce Proceeding.

A trial court does not have unfettered discretion to take judicial notice of its file in another case over which it has presided. *USLIFE Title Ins. Co. v. Howard*, 603 S.W.2d 322, 325 (Tex. Civ. App.—Amarillo 1980, no writ). Rather, the trial court may only do so when the other "case involved the same

---

[3] There is no authority to indicate that a notice of lis pendens—standing alone—would give rise to an adverse interest. Relatedly, the mere fact that a person owes a debt to the proposed ward does not automatically establish an adverse interest. *In re Guardianship of Miller*, 299 S.W.3d 179, 189 (Tex. App.—Dallas 2009, no pet.) (en banc).

subject matter between the same, or practically the same, parties." *Id.*; *see also McCurry v. Aetna Cas. & Sur. Co.*, 742 S.W.2d 863, 867 (Tex. App.—Corpus Christi 1987, writ denied). Further, the trial court is obligated to notify the parties that it is taking judicial notice. *In re C.L.*, 304 S.W.3d 512, 515 (Tex. App.—Waco 2009, no pet.).

The trial court was not authorized to take judicial notice of the divorce proceeding. Mr. and Mrs. Gilmer's divorce does not present the same issues as those raised in the guardianship proceeding. A divorce proceeding is focused upon a division of the parties' community property. *See Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). The guardianship proceeding focuses upon whether a guardian should be appointed over Mrs. Gilmer's person and estate. *See* TEX. ESTATES CODE § 1101.051. Dan and Sharlene are not parties to their parents' divorce, and they have no claims against either parent or the community estate. *See* 2 RR 77-78, 92-93.[4]

Despite the trial court's error, the ad litem suggests that Dan and Sharlene failed to raise the issue with the trial court. The record reflects that the parties were not notified of the trial court's decision to take judicial notice until after the trial court signed the order granting the motion in limine and well after the appeal had been perfected. *See* CR 418, 455, 458-59. Dan and Sharlene did file an objection even though the appeal was proceeding forward.

---

[4] To the extent the ad litem will argue that Dan is a "party" as it relates to the notice of lis pendens filed by Mrs. Gilmer, the notice of lis pendens has been expunged. 2 RR 49; CR 453. Dan has not intervened in the divorce proceeding to pursue claims against his mother.

8

CR 458-59. Thus, the Court should decide whether the trial court erred in taking judicial notice of the divorce proceeding. *See In re C.L.*, 304 S.W.3d at 515-16.[5]

## II. The Ad Litem Has Not Provided Any Authority from Which the Court Could Conclude That the Trial Court's Conclusions of Law Are Correct.

The trial court cited Estates Code section 1104.354(1) in support of its conclusion that Dan and Sharlene lack standing to initiate the guardianship proceeding. CR 445-56. But section 1104.354(1) only discusses an instance where a person could not be appointed a guardian: "A person may not be appointed a guardian if the person: (1) is a party or is a person whose parent is a party to a lawsuit concerning or affecting the welfare of the proposed ward." TEX. ESTATES CODE § 1104.354(1). This section has no application here.

A person could have standing to initiate a guardianship proceeding even though he or she may be disqualified from serving as the guardian. *Betts*, 2001 WL 40337, at *4. While it may be true that a person who is suing the proposed ward cannot initiate a guardianship proceeding or serve as the guardian, that situation is not presented in this case. There is no on-going litigation between Mrs. Gilmer and her children.[6] Accordingly, for the reasons expressed above

---

[5] *But see In re C.M.C.*, No. 14-12-00186-CV, 2012 WL 3871359 (Tex. App.—Houston [14th Dist.] Aug. 30, 2012, pet. denied) (mem. op. on reh'g).

[6] Dan and Sharlene are unaware of any authority holding that a person has an adverse interest for purposes of section 1055.001 of the Estates Code simply because their parent is a party to a lawsuit concerning the proposed ward's welfare.

and in Dan and Sharlene's principal brief, the Court should reverse the trial court's order.

## III.   Prayer.

WHEREFORE, PREMISES CONSIDERED, Appellants Sharlene Gilmer Anderson and Daniel Gilmer respectfully pray that the Court reverse the trial court's order granting the motion in limine, remand the case to the trial court for further proceedings, and grant other and further relief to which they may be justly and equitably entitled.

Respectfully submitted,

/s/ Samuel V. Houston, III
SAMUEL V. HOUSTON, III
State Bar No. 24041135
HOUSTON DUNN, PLLC
4040 Broadway, Suite 440
San Antonio, Texas 78209
Telephone: (210) 775-0882
Fax: (210) 826-0075
sam@hdappeals.com

J. Barrett Shipp
State Bar No. 24060601
HEINRICHS AND DEGENNARO, P.C.
100 N.E. Loop 410, Suite 1075
San Antonio, Texas  78216
Telephone: (210) 366-0900
Fax: (210) 366-0981
BarrettS@heinrichslaw.com

ATTORNEYS FOR APPELLANTS

## CERTIFICATE OF COMPLIANCE

In accordance with Texas Rule of Appellate Procedure 9.4, the undersigned certifies that the foregoing computer-generated brief contains 2,477 words.

/s/ Samuel V. Houston, III
SAMUEL V. HOUSTON, III

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served in accordance with the Texas Rules of Appellate Procedure on the 20th day of January, 2015, to the following:

Shawn Lovorn                                      *Via email/eservice*
LOVORN LAW FIRM
470 S. Main St. #4
Boerne, Texas 78006

Chris Wallendorf                                  *Via email/eservice*
Law Office of Chris Wallendorf
722 Front Street, Suite 101
P.O. Box 279
Comfort, Texas 78013


/s/ Samuel V. Houston, III
SAMUEL V. HOUSTON, III